**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ROBERT KLEIN,

                     *Pro se* Plaintiff,

                                        **REPORT AND**
                                        <u>**RECOMMENDATION**</u>

          -against-
                                      CV 17-4841 (JS) (AKT)

BROOKHAVEN HEALTH CARE FACILITY
and THE MCGUIRE GROUP,

                     Defendants.
-----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      <u>PRELIMINARY STATEMENT</u>

      Pro se Plaintiff Robert Klein ("Plaintiff") commenced this action against his former

employers Defendants Brookhaven Health Care Facility ("Brookhaven") and The McGuire

Group ("McGuire") (collectively, "Defendants") alleging myriad violations of federal, state, and

local antidiscrimination laws. *See generally* Plaintiff's EDNY Form Discrimination Complaint

("Compl.") [DE 1]; Plaintiff's New York State Division of Human Rights ("NYSDHR")

Complaint ("DHR Compl.") [DE 1-2].[1]  Primarily, Plaintiff's lawsuit asserts that Defendants

unlawfully terminated him from his maintenance position because of his age.  He further claims

that the Defendants subjected him to retaliation and other forms of unlawful treatment.  *See*

*generally id*.  Defendants have moved to dismiss the Complaint pursuant to Federal Rules of

---

[1]  Plaintiff's pleadings consist of (1) the Eastern District of New York's form employment discrimination complaint [DE 1], and (2) Plaintiff's New York State Division of Human Rights Complaint, attached to his federal court complaint as an exhibit [DE 1-2]. Because Plaintiff's substantive allegations appear in his DHR complaint, the Court will cite to this document when referencing his factual allegations.  The EDNY form employment discrimination complaint purports to state the laws under which Plaintiff brings his action, and, as such, the Court will also reference this document from time to time.

Civil Procedure 12(b)(1) and 12(b)(6).  *See generally* Defendants' Motion to Dismiss ("Defs.'

Mot.") [DE 14]; Defendants' Memorandum in Support ("Defs.' Mem.") [DE 16]; Defendants'

Reply ("Defs.' Reply") [DE 18].  Plaintiff opposes, asserting that he has standing to bring this

case and that he "has brought forward violations submitted on his formal complaint form of

numerous United States Codes and other codes abused while being employed at BHCF."  *See*

Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s Opp'n.") [DE 17] at 8.

Judge Seybert referred Defendants' motion to dismiss to this Court for a Report and

Recommendation as to whether the motion should be granted.  *See* Electronic Order dated

October 11, 2018.  For the reasons set forth below, this Court respectfully recommends to Judge

Seybert that Defendants' motion to dismiss be GRANTED, in part, and DENIED, in part.

## II.    BACKGROUND

### A.    The Allegations in Plaintiff's Pleadings[2]

The following allegations are taken from the documents constituting Plaintiff's pleadings,

namely his EDNY Form Discrimination Complaint and his DHR Complaint.  The Court has

attempted to distill the allegations into a coherent narrative and accepts the allegations as true for

purposes of analyzing Defendants' motion.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co.,*

*L.P.*, 737 F.3d 166, 176 (2d Cir. 2013).  However, the Court does not recite below – nor does it

credit – conclusory factual allegations, legal conclusions, or unwarranted deductions.  *See Alston*

*v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014) (explaining that

when analyzing the sufficiency of a complaint, "mere conclusions of law or unwarranted

deductions need not be accepted").

---

[2]   For ease of reference, and because the allegations in Plaintiff's pleadings are not
organized into consecutively-numbered paragraphs, the Court references Plaintiff's pleadings by
the page number of either his EDNY Form Discrimination Complaint or his DHR Complaint.

### 1.    *Allegations in Plaintiff's DHR Complaint*

Plaintiff alleges that on September 7, 2016, while he was employed in the maintenance department at Brookhaven, Administrator Debbie Gaines ("Gaines") called Maintenance Supervisor Shaun Patrick ("Patrick"), Director of Nursing Kellie Burridge ("Burridge") and the Plaintiff into a conference room.  DHR Compl. at 5.  Plaintiff states that Gaines informed the group that someone had used a company work phone to visit a pornographic website between noon and 5 p.m. on September 5, 2016 and Gaines asked if Plaintiff had been on duty and in possession of the specific phone on that date.  *Id*. at 5-6.  Plaintiff informed Gaines that he had been in possession of the phone; however, he had left the phone unattended in the maintenance shop when charging it and while he was doing his maintenance "rounds."  *Id*. at 5.  Plaintiff alleges that he further informed Gaines that he did not know how to work the phone, and at times even had to ask others how to work the phone.  *Id*. at 5-6.  Plaintiff states that he was then accused by Gaines of visiting the website in violation of a zero-tolerance company policy against such behavior and was told that as a result, he could either choose to resign and collect unemployment or be fired.  *Id*. at 6.  Plaintiff stated that he would not resign since he did not visit the website and Gaines responded that "she ha[d] to let [Plaintiff] go."  *Id*.  According to the Plaintiff, "Shaun [Patrick] and Kellie [Burridge] looked in shock over the whole ordeal."  *Id*.

The DHR Complaint goes on to state that "[t]here is no rule or written procedure to have and/or keep this particular work speed phone in ones [*sic*] possession during the entire time of said shift assignment."   DHR Compl. 6.  Plaintiff asserts that his shift on that day had been from 7 a.m. to 3 p.m., and that around 2:40 p.m. he had given the work phone to the next shift's worker.  *Id*.  This person, Plaintiff claims, "was never questioned or terminated and this incident

could have been during his shift." *Id*. This employee, whom Plaintiff identifies as "Joe Milia" is "about 20+ years [Plaintiff's] junior." *Id*.

Plaintiff retrieved his personal items on September 8, 2016 and turned over all company tools he had in his lockers. DHR Compl. at 7. Several days later, on September 11, 2016, Plaintiff called Patrick "asking him for a statement of the meeting and the truth with the administrator just in case it was needed." *Id*. According to Plaintiff, Patrick "stated he would write it up as he heard the same thing [Plaintiff] heard." *Id*. The next day, Patrick called Plaintiff and stated he had talked with administration, and they would not "be writing a termination letter up." Similarly, Patrick stated he "was unable to write the statement" as they had discussed and that "he was sorry." *Id*. In response, Plaintiff texted Patrick and told him that "they must have got to him." [3] *Id*. at 8.

The remainder of Plaintiff's DHR Complaint contains only a handful of creditable factual allegations. Instead, the bulk of the charge consists primarily of conclusory, ad hominem attacks against Plaintiff's former employer. The few factual allegations which the Court can consider include the assertion that Plaintiff was "probably . . . the oldest employee" at Brookhaven, and that he was asked by other employees, including his supervisor, when he was going to retire. DHR Compl. at 8. Plaintiff also states that the Brookhaven maintenance crew, including Gaines, had a meeting with McGuire's maintenance crew on July 25, 2016, at which time Gaines "asked if any[one] would think of being let go as cut backs [were] being considered." *Id*. at 9. Plaintiff states that he "was looked straight in the eyes by [Gaines] as it was believed that she was waiting

---

[3] The Court does not credit or consider is Plaintiff's assertion that Patrick "is a YES guy. Never sticks up for his troops and is a puppet on a string, and is in fear of losing his job." DHR Compl. at 8. This type of assertion falls into the category of conclusory factual allegations which the Court may not take into account.

for a response from [Plaintiff] on the subject." However, Plaintiff stated he "would rather stay as is." *Id*. From July 27, 2016 through August 27, 2016, Plaintiff was on vacation. *Id*.

Plaintiff's DHR Complaint alleges that the purported incident with the cell phone was a pretext for unlawful age-based termination which also arose from Plaintiff's history as a whistleblower. According to the Plaintiff, he "continually brought both suggestions and complaints forward for mainly safety concerns against employees and towards the facility in general." DHR Compl. at 9. He states that he made such suggestions and complaints by giving Brookhaven's Human Resources Department, along with Gaines and other supervisors, "written letters of concerns and complaints especially towards substantial and specific public health, safety and danger matters from time to time." *Id*. Plaintiff maintains that "[m]ost were not taken seriously and I was talked to by the administrator on a few occasions about me coming forth." The DHR Complaint further states that "corporate headquarters and the Fire Marshall also were notified of health and safety issues here at BHCF. These date back to 2012 straight through to 2016." *Id*. at 10.

In an additional purported instance of whistleblowing, Plaintiff claims he told his supervisor that Chris Gaines, the son of Administrator Debbie Gaines, "was stealing time/as money from the facility and has also borrowed and has kept with no sight of returning a company tool (tree trimmer) and has been observed taking material out of the shop and facility for his own personal gain." DHR Compl. at 10. Further, Plaintiff alleges that one day Chris Gaines "punched in and then disappeared for the day and was even found sleeping in his car and/or in one of the Gibbie trailers the facility uses to store gear/supplies." *Id*. Plaintiff claims he brought this information to his immediate supervisor's attention, "who in return stated, we know it but it's the administrator's son and nothing will be done about it (or words to that

effect)." *Id.* These concerns and others were brought up in a "quality of life meeting" in early 2016, in response to which Debbie Gaines stated that "if [she] heard one more complaint about one of [her] family members [Plaintiff and other maintenance workers'] job[s] would be terminated." *Id.*

Plaintiff also appears to allege, although it is less than clear, that he "disclosed" certain concerns regarding patient care "to the proper authorities." DHR Compl. at 10. Similarly, Plaintiff says that Brookhaven "puts on a front during state inspections to cover up what really goes on behind closed doors. Advance notice is given to the facility prior to state inspection and the administrator makes a PA warning employees that the state is in the building so as everyone is to be on good behavior and perform during this time." DHR Compl. at 11.

As to his own performance, Plaintiff states that he had never called out sick since he began working at Brookhaven and he has always been on time for work. DHR Compl. at 11. He states that he performed his job "110% each and every day" and, as an example, notes that during winter months, he was "<u>ALWAYS</u> standing tall to do my part to shovel/hand plow/salt the grounds." *Id.* According to Plaintiff, he "even sleep[s] in [his] van on the coldest of nights so as to make sure [he is] on duty when needed or scheduled," and "there is not a blemish against [his] record." *Id.*

### 2.   *Plaintiff's EDNY Form Complaint*

Plaintiff's EDNY Form Discrimination Complaint is attached as an exhibit to his DHR Complaint. He references the attachment under the "facts" section without adding any further allegations. *See* Compl. at 5. As to the bases for jurisdiction, on his EDNY Complaint, Plaintiff has checked the boxes next to "Title VII of the Civil Rights Act of 1964," "Age Discrimination in Employment Act of 1967," as well as "Other federal law," "Relevant state law," and

"Relevant city or county law." *See id*. at 3-4.  Under "Other federal law," Plaintiff has written "USC 621, 623." *Id*. at 4.  Under "Relevant state law," Plaintiff has written multiple numbers, appearing to identify sections of the New York Labor Law, Human Rights Law, and Public Health Law.  However, Plaintiff's designations are less than clear.  *See id*.  Under "Relevant city or county law," Plaintiff has written "UFC chapter 8.55."  *Id*.

###    B.    Procedural Background

 Plaintiff filed his complaint with the New York State Division of Human Rights on or about October 6, 2016.  *See* DHR Compl. at 1.  In a letter dated November 8, 2016, the United States Equal Employment Opportunity Commission ("EEOC") informed Plaintiff that it would not be investigating his claims because the matter was being investigated by the NYSDHR.  *See* Compl. at 9.  On or about April 7, 2017, the NYSDHR concluded that there was insufficient evidence to establish probable cause that discrimination had occurred.  *See* Affirmation of Erin S. Torcello, Esq. in Support of Defendants' Motion to Dismiss ("Torcello Aff.") [DE 15] ¶ 5.[4] On or about May 18, 2017, the EEOC issued Plaintiff a formal Notice of Dismissal and Right to Sue, in which it adopted the findings of the NYSDHR.  *See* Compl. at 8.  Plaintiff therefore met the condition precedent to bringing suit in federal court.

Plaintiff filed the instant Complaint on or about August 17, 2017.  *See* DE 1.  Defendants filed a letter request for a pre-motion conference on October 16, 2017 for purposes of moving to dismiss Plaintiff's Complaint.  *See* DE 11.  Plaintiff filed two responses in opposition to Defendants' letter request, one on October 26, 2017, and the second on November 11, 2017, respectively.  *See* DE 12, 13.  Judge Seybert waived her pre-motion conference requirement on

---

[4]    Attorney Torcello's affirmation states that "[a] copy of the Division's no probable cause determination is attached" to the affirmation as Exhibit A, however no such exhibit is attached.

November 16, 2016, and set a briefing schedule for the motion to dismiss. *See* Electronic Order dated December 18, 2017. Defendants' motion was filed on December 18, 2017. *See* DE 14-16. Plaintiff filed his opposition to Defendants' motion on January 16, 2018, *see* DE 17, and Defendants filed their reply on February 2, 2018. *See* DE 18. Judge Seybert thereafter referred Defendants' motion to dismiss to this Court for a Report and Recommendation as to whether the motion should be granted. *See* Electronic Order dated October 11, 2018.

## III.   STANDARD OF REVIEW

At the outset, the Court observes that *pro se* filings like Plaintiff's Complaint are to be liberally construed. *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir.1994)).

*Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp.*, No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ.*, 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002)); *Guity v. Uniondale Union Free Sch. Dist.*, No. 15-CV-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017) ("Plaintiff's status as a *pro se* litigant does not relieve her of her obligation to adhere to all applicable procedural rules."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[*P*]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal

8

quotations and citations omitted).  Likewise, "mere conclusions of law or unwarranted deductions need not be accepted."  *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014).

That being said, the general standard of review on a Rule 12(b)(6) motion to dismiss remains applicable here:  the Court must liberally construe the claims set forth in the Complaint, accept all factual allegations in the Complaint as true, and draw all reasonable inferences in favor of the Plaintiff.  *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The Plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

The above standard applies to employment discrimination claims as much as any other claims.  *See E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 254 (2d Cir. 2014) ("*Twombly*'s endorsement of [*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)] mandates, at a minimum, that *Swierkiewicz*'s rejection of a heightened pleading standard in discrimination cases remains valid.").  Indeed, before deciding either *Iqbal* or *Twombly*, the Supreme Court made clear in *Swierkiewicz v. Sorema, N.A.* that "under a notice pleading system, it is not

9

appropriate to require a plaintiff to plead facts establishing a prima facie case" of employment discrimination because "the ordinary rules for assessing the sufficiency of a complaint apply." 534 U.S. 506, 508, 511 (2002).  Notwithstanding the doctrinal shift which took place in the movement from the "no set-of-facts" standard articulated in *Conley v. Gibson,* 355 U.S. 41 (1957) to the now familiar "plausibility" standard articulated in *Iqbal* and *Twombly*, "the Supreme Court, in *Twombly,* reaffirmed its statement from *Swierkiewicz* that an employment discrimination plaintiff need not establish a *prima facie* case at the pleading stage." *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) (citing *Twombly*, 550 U.S. at 570).  "Rather, an employment discrimination complaint must include only a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Kunik v. New York City Dep't of Educ.*, No. 15-CV-9512, 2017 WL 4358764, at *4 (S.D.N.Y. Sept. 29, 2017) (internal quotation omitted).  And yet, while "the elements of a *prima facie* case under *McDonnell Douglas* need not be established at the pleading stage, these elements nevertheless 'provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible.'" *Trachtenberg*, 937 F. Supp. 2d at 466 (quoting *Kassman v. KPMG LLP,* 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013)).  Accordingly, the Court considers them in the analysis which follows.

In adjudicating a Rule 12(b)(6) motion, the Court must limit itself to facts alleged in the Complaint, which allegations are accepted as true; to documents attached to the Complaint as exhibits or incorporated in the complaint by reference; to matters of which judicial notice may be taken; and to documents whose terms and effect are relied heavily upon in the complaint and, thus, are rendered "integral" to the complaint.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).  To the

extent "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007).

The Court does not find conversion to a Rule 56 motion to be necessary here. Rather, each of the documents attached to Plaintiff's Complaint – *i.e.*, his DRH Complaint, EEOC correspondence and Notice of Dismissal and Right to Sue – are properly within the scope of what the Court may consider in evaluating Defendants' motion to dismiss. The Court finds these documents are effectively incorporated into Plaintiff's Complaint. Moreover, documents filed or created in conjunction with Plaintiff's DHR Complaint may be properly considered by the Court. *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565 (2d Cir. 2006) (noting that in ruling on a motion to dismiss "it is proper for this court to consider the plaintiffs relevant filings with the EEOC"). Additionally, the Court notes that while the first page of Plaintiff's DHR Complaint references "Appendix A: complaints brought forward[;] [Appendix] B: copies of Employee Handbook[;] [Appendix] C: phone/text log[;] [Appendix] D: positive happenings – my recognitions/awards," DHR Complaint at 1, no such appendices are attached to either Plaintiff's DHR Complaint or his EDNY Form Discrimination Complaint. As such, the Court does not consider any of these external documents.

Since conversion to a Rule 56 motion is unnecessary, the Court will proceed with its analysis under the standard set forth above.

## IV.    DISCUSSION

Defendants' motion to dismiss raises several different arguments as to why Plaintiff fails to state each of the claims he purports to assert. The Court will address each claim in turn which Plaintiff appears to be asserting in his EDNY Form Discrimination Complaint.

### A.      Age Discrimination In Employment Act

Plaintiff has asserted a claim for age discrimination and retaliation in violation of the Age

Discrimination in Employment Act of 1967 ("ADEA").  The ADEA, as codified in 29 U.S.C.

§§ 621-34, makes it "unlawful for an employer . . . to discharge any individual or otherwise

discriminate against any individual with respect to his compensation, terms, conditions or

privileges or employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  In addition

to prohibiting age-based discrimination, the ADEA prohibits retaliation, making it unlawful to

"for an employer to discriminate against any of his employees . . . because such individual . . .

has opposed any practice made unlawful by this section, or because such individual . . . has made

a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

litigation under this chapter."  *Id*. § 623(d).  Defendants argue Plaintiff fails to state a claim for

either discrimination or retaliation under the ADEA.

### 1.      *Age-Based Discrimination*

To state a *prima facie* case of age discrimination under the ADEA, a plaintiff must

plausibly allege facts from which the Court can infer that:  "(1) she was within the protected

group of employees (those over age 40); (2) she was qualified for the position in question; (3)

she experienced an adverse employment action; and (4) that action occurred under circumstances

giving rise to an inference of discrimination."  *Trachtenberg*, 937 F. Supp. 2d at 465-67 (citing

*Bucalo v. Shelter Island Union Free Sch. Dist.,* 691 F.3d 119, 129 (2d Cir. 2012)).  As noted

above, although an employment discrimination plaintiff need not affirmatively plead each of

these elements, the Court looks to these elements to determine whether there is sufficient factual

matter in the complaint to give a defendant fair notice of the claim and the grounds on which it

rests.  *Trachtenberg*, 937 F. Supp. 2d at 465.  Importantly, "a plaintiff bringing a disparate-

treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 180, 129 S. Ct. 2343, 2352, 174 L. Ed. 2d 119 (2009); *Palmer v. Shchegol*, No. 14-CV-04406, 2016 WL 5678544, at *2 (E.D.N.Y. Sept. 30, 2016) (citing *Ingrassia v. Health & Hosp. Corp.*, No. 14-cv-1900, 2015 WL 5229444, at *6 (E.D.N.Y. Sept. 8, 2015) ("[a] plaintiff proceeding under the ADEA must allege that discrimination was the 'but for' cause of the employer's adverse action").

Defendants are not disputing that Plaintiff has pleaded the first, second, and third elements of his ADEA discrimination claim.  Nor does it appear that the allegations in Plaintiff's pleadings fail to assert facts from which these elements may be plausibly satisfied.[5]  Plaintiff's DHR Complaint states that he was born in 1951, making him 65 years of age at the time of the alleged discrimination in 2016 -- well within the ADEA's protected class of individuals at least 40 years of age.  *See* 29 U.S.C. § 631(a).  Accordingly, Plaintiff has satisfied the first element of a *prima facie* claim of discrimination.  Similarly, Plaintiff's DHR Complaint sufficiently pleads the second and third elements of a *prima facie* claim:  Plaintiff adequately alleges that (1) he was qualified for the position he held, and (2) he suffered an adverse employment action in that he was terminated.

Defendants argue, rather, that Plaintiff's pleadings "are utterly devoid of any specific facts connecting his age to his termination."  Defs.' Mem. at 12.  As a result, Defendants contend, Plaintiff has failed to plausibly allege that the adverse employment action occurred under circumstances giving rise to an inference of discrimination.  *Id.*  A plaintiff may show discriminatory motive "either directly, by alleging facts that show an intent to discriminate, or

---

[5]  Although affirmatively pleading prima facie elements may not be required at this stage, the Court will point out where Plaintiff has succeeded in doing so.

indirectly, by alleging circumstances that give rise to a plausible inference of discrimination." *Palmer*, 2016 WL 5678544, at *2 (citing *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)).  In general, "[a]n inference of discrimination can arise from circumstances including, but not limited to, the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the plaintiff's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge."  *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015).  "Significantly, at the pleading stage, a pro se plaintiff must only make a 'minimal showing of comparability.'"  *Palmer*, 2016 WL 5678544, at *4 (quoting *Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 266 (E.D.N.Y. 2015)).  A plaintiff may also allege discrimination "by creating a mosaic of intentional discrimination by identifying bits and pieces of evidence that together give rise to an inference of discrimination."  *Adlah v. Emergency Ambulance Servs.*, No. 17-CV-4688, 2018 WL 3093972, at *6 (E.D.N.Y. June 22, 2018) (quoting *Vega*, 801 F.3d at 87) (internal quotations omitted).

Notwithstanding the weakness of his pleadings in certain respects, -- and construing Plaintiff's factual allegations in the light most favorable to him as well as drawing all reasonable inferences in his favor -- the Court finds that Plaintiff has sufficiently alleged several "bits and pieces" of information from which, taken together, Plaintiff can meet his burden as to the existence of an inference of discrimination.  First, Plaintiff asserts that at the July 25, 2016 maintenance meeting – which was only a month and a half prior to his termination – Gaines looked Plaintiff "straight in the eye" and "asked if any[one] would think of being let go as cut backs [were] being considered."  DHR Compl. at 9.  Plaintiff states that he believed Gaines was waiting for a response from him.  *Id*.  Secondly, Plaintiff states he was asked by other

employees, including his supervisor, when he was going to retire, and he avers that he was probably the oldest employee at Brookhaven. *Id*. at 8. In addition, the circumstances under which Plaintiff was (1) informed that Brookhaven had discovered that someone had misused the company phone and (2) immediately terminated Plaintiff despite his denials and without any further investigation, are problematic.

In the Court's view, these allegations, when combined, suffice to "nudge[ ] [Plaintiff's] claims across the line from conceivable to plausible." *Gonzalez v. Carestream Health, Inc.*, 520 Fed. App'x 8, 10 (2d Cir. 2013) (quoting *Twombly*, 550 U.S. at 555). Accordingly, Plaintiff has plausibly alleged that Defendants' decision was terminate him was motivated by discriminatory intent. These allegations are "sufficient to give [Defendants] fair notice of his claims and the grounds upon which they rest[ ]." *Gonzalez*, 520 Fed. App'x. at 10 (citing *Swierkiewicz,* 534 U.S. at 512); *Ingrassia,,*130 F. Supp. 3d at 719 ("In reviewing the allegations of Plaintiff's Complaint, the Court is mindful of the lowered standard of review applicable to discrimination complaints at the motion to dismiss stage."); *see Kunik*, 2017 WL 4358764, at *4. The Court also finds Plaintiff has plausibly alleged that this discriminatory intent was a "but for" cause of his termination. In light of Plaintiff's having sufficiently pleaded the other elements of a *prima facie* claim for age discrimination under the ADEA, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be DENIED as to this claim.

### 2.    *Retaliation*

To state a claim for retaliation under the ADEA, a plaintiff must allege that: "(1) [the employee] was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Gertskis v. U.S. E.E.O.C.,* No. 11 Civ. 5830, 2013

WL 1148924, at *9 (S.D.N.Y. March 20, 2013) (quoting *Galanis v. Harmonie Club of The City of New York*, No. 13 CIV. 4344, 2014 WL 101670, at *5 (S.D.N.Y. Jan. 10, 2014)). Defendants argue that Plaintiff "has failed to allege that he engaged in any activity protected by the ADEA." Defs.' Mem. at 17. Defendants identify four allegations relating to "complaints" which Plaintiff alleges he made, as stated in his DHR Complaint: (1) "I have continually brought both suggestions and complaints forward for mainly safety concerns against employees and towards the facility in general," DHR Compl. at 9; (2) these "suggestions and complaints" related to "substantial and specific public health, safety and danger matters from time to time," *id.*; (3) "I even brought to my supervisor that the administrators son (Chris Gaines) was stealing time/as money from the facility and has also borrowed and has kept with no sight of returning a company tool (tree trimmer) and has been observed taking material out of the shop and facility for his own personal gain without ever returning those taken," *id.* at 10; and (4) complaints related to "[q]uality of resident's/patients [*sic*] care that I believed to be improper quality of their rights were also disclosed but with no noticeable results, and as the behavior persisted this had to be reported to the proper authorities." *Id.*; *see* Defs.' Mem. at 17-18. According to Defendants, none of these are protected activities under the ADEA and Plaintiff's retaliation claim under this statute must fail as a result.

The Court is satisfied that Plaintiff's pleadings adequately allege that he suffered a materially adverse action by way of his termination. The question, then, is whether his pleadings allege facts from which the Court can plausibly infer the existence of the other three elements of a *prima facie* claim. Essential to the existence of two of these elements is the allegation that Plaintiff engaged in a protected activity in the first instance. "Protected activity under the ADEA includes opposing or charging unlawful practices, or participating in any manner in the

investigation, proceedings or litigation of an ADEA claim." *Pocino v. Culkin*, No. 09 CV 3447, 2010 WL 3516219, at *3 (E.D.N.Y. Aug. 31, 2010).  "In order to satisfy the 'protected activity' element of retaliation, [a] plaintiff need not show that the alleged activity which the plaintiff opposed actually violates the ADEA.  Rather, [a] plaintiff must simply 'have had a good faith, reasonable belief that he was opposing an employment practice made unlawful by . . . [the ADEA].'" *Dinicola v. Chertoff*, No. 05 CV 4968, 2007 WL 1456224, at *5 (E.D.N.Y. May 16, 2007) (quoting *Kessler v. Westchester County Dept. of Social Services,* 461 F.3d 199, 210 (2d. Cir. 2006)).

As Defendants point out, none of the activities Plaintiff alleges he was engaged in was directed at conduct made illegal by the ADEA.  That is, nothing Plaintiff raised concerns about related to *age* discrimination.  *See* 29 U.S.C. § 623(a); *Dinicola*, 2007 WL 1456224, at *5 ("The retaliatory provisions of both Title VII and ADEA require that the protected activity include some form of opposition to acts *made unlawful by their respective statutes.*") (emphasis in original).  Consequently, Plaintiff has failed to plausibly state a claim for retaliation under the ADEA.  Because Plaintiff has failed to allege that he was engaged in a protected activity under the ADEA, his ADEA retaliation claim cannot proceed.  The Court therefore respectfully recommends to Judge Seybert that Defendants' motion to dismiss be GRANTED with respect to Plaintiff's retaliation claim.

**B.    Title VII**

Under the "Basis for Jurisdiction" section of his EDNY Form Discrimination Complaint, Plaintiff has checked the box next to Title VII of the Civil Rights Act of 1964.  *See* Compl. at 3. Like the ADEA, Title VII contains provisions prohibiting both discrimination and retaliation. However, while the ADEA's provisions apply to a protected class consisting of individuals at

least 40 years of age, Title VII's provisions apply to protected classes defined by race, color, religion, sex, and national origin.  *See* 42 U.S.C. § 2000e-2(a).

A review of Plaintiff's pleadings shows that there is no mention of any of the characteristics which define these protected classes – race, color, religion, sex, or national origin – either in the context of discrimination or retaliation.  As a result, the Court need not engage in the analysis to determine if Plaintiff has adequately alleged either a discrimination or retaliation claim under Title VII – he has not.

Moreover, even assuming for the sake of argument that Plaintiff was able to plead the elements of a Title VII claim, this Court is without jurisdiction to hear such a claim.  The reason is that Plaintiff did not raise any claim of discrimination prohibited by Title VII before the NYSDHR or EEOC.  "The federal courts generally have no jurisdiction to hear claims not alleged in an employee's EEOC charge."  *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 613 (2d Cir. 1999).  Page 3 of Plaintiff's DHR Complaint alleges discrimination based on age only, and leaves unmarked the boxes next to all other bases for discrimination, including those covered by Title VII.  Although "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency," *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001), a claim of discrimination based on race, color, religion, sex, or national origin would not, in the Court's view, be "reasonably related" to Plaintiff's age-discrimination claim as filed with NYSDHR.  Rather, these other denominated categories are essentially independent bases on which to assert a claim of discrimination.  *See, e.g., id.* (noting that "[a] claim alleging retaliation by an employer against an employee for filing a discrimination charge is one type of claim we have recognizes as 'reasonably related' to the underlying discrimination charge") (internal

quotations omitted).  Accordingly, any Title VII cause of action which the Plaintiff may be able to plead would not be viable as a result of Plaintiff's failure to exhaust his administrative remedies.

For both of these reasons, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be GRANTED as to Plaintiff's Title VII claims.

### C.     New York State Human Rights Law

Under the subsection "Relevant state law" on Page 4 of his EDNY Form Discrimination Complaint, Plaintiff has written "296" with the subscript notation "HR Law," as a basis for jurisdiction.  *See* Compl. at 4.  Article 15, Section 296 of the New York State Human Rights Law ("NYSHRL") prohibits employment discrimination based on, *inter alia*, an individual's age. N.Y. EXEC. LAW § 296(a).  Defendants argue that this Court lacks subject matter jurisdiction to hear any claim of discrimination brought pursuant to the NYSHRL, since Plaintiff previously raised this claim before the NYSDHR.  *See* Defs.' Mem. at 18-19.  The Court agrees.

In *Moodie v. Federal Reserve Bank of New York*, the Second Circuit held that because N.Y. EXEC. LAW § 297(9) deprives state courts of jurisdiction to entertain claims previously raised before the NYSDHR, federal courts also lack jurisdiction to entertain these claims.  *See generally* 58 F.3d 879, 882 (2d Cir. 1995); *Promisel v. First Am. Artificial Flowers, Inc.*, 943 F.2d 251, 257 (2d Cir. 1991) ("If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction, standing in the shoes of a state court, must follow the state's jurisdictional determination and not allow that claim to be appended to a federal law claim in federal court."); *see also York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002) ("Thus, by the terms of the statute and code, respectively,

the NYHRL and CHRL claims, once brought before the NYSDHR, may not be brought again as a plenary action in another court.").

Because Plaintiff unsuccessfully raised his NYSHRL claims involving age discrimination before the NYSDHR, this Court lacks jurisdiction to entertain the same claims.  Therefore, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss the NYSHRLclaims be GRANTED.

> ### D.    New York City Human Rights Law

Defendants argue that Plaintiff cannot maintain a New York City Human Rights Law ("NYCHRL") claim because the alleged discrimination took place solely in Suffolk County, New York, and not in New York City.  *See* Pl.'s Mem. at 19-20.  It is not clear to the Court that Plaintiff is attempting to raise a NYCHRL claim.  However, to the extent he may be doing so, that claim cannot stand.  "The NYCHRL is intended to cover people 'who work in the city.'" *Vangas v. Montefiore Med. Ctr.*, 823 F.3d 174, 182 (2d Cir. 2016) (quoting *Hoffman v. Parade Publ'ns,* 15 N.Y.3d 285, 907 N.Y.S.2d 145, 933 N.E.2d 744, 747 (2010)).  Given the absence of any connection to New York City and the fact that Defendants' alleged discriminatory conduct occurred entirely outside of New York City, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be GRANTED with respect to any NYCHRL claim Plaintiff may be attempting to assert.

> ### E.    New York Labor Law Sections 740 and 741

Plaintiff makes a passing reference to "740" and "741" under the subsection "Relevant state law" on Page 4 of his EDNY Form Discrimination Complaint as two bases for jurisdiction. *See* Compl. at 4.  The Court assumes Plaintiff is referring to Sections 740 and 741 of the New York Labor Law ("NYLL") which provide protections to certain whistleblowers.  Defendants

argue that Plaintiff has failed to plead a claim under either statute.  The Court will address each cause of action in turn.

### 1. NYLL § 740

Section 740 of the NYLL provides that "[a]n employer shall not take any retaliatory personnel action against an employee because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety."  N.Y. LAB. LAW § 740(2)(a).  The plain language of Section 740 requires that, in order to state a cause of action, "a plaintiff must allege facts supporting the conclusion that (1) he was subject to a retaliatory personnel action after (2) disclosing to a supervisor (3) a practice of the employer that is in violation of a law, rule, or regulation (4) that creates and presents a substantial and specific danger to the public health or safety."  *Clarke v. TRW, Inc.*, 921 F. Supp. 927, 933 (N.D.N.Y. 1996).  "[F]or pleading purposes, the complaint need not specify the actual law, rule or regulation violated, although it must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct."  *Webb-Weber v. Cmty. Action for Human Servs., Inc.*, 23 N.Y.3d 448, 453 (2014).

Plaintiff has failed to "identify the particular activities, policies or practices in which the employer allegedly engaged" sufficient to put Brookhaven on notice of the complained-of conduct.  His DHR Complaint contains only vague references to whistleblowing regarding public health or safety, including the allegation that he expressed "concerns and complaints especially towards substantial and specific public health, safety and danger matters from time to time," DHR Compl. at 9, that "corporate headquarters and the Fire Marshall also were notified of

health and safety issues here at BHCF," *id*. at 10, and that he "disclosed" certain concerns regarding patient care "to the proper authorities." *Id*. These vague references are insufficient to satisfy the implicit notice requirement of Section 740. As such, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss Plaintiff's claim under NYLL §740 be GRANTED.[6]

### 2.   NYLL § 741

Section 741 of the NYLL is also a whistleblower statute, but it is more limited in scope than Section 740. Section 741 protects from retaliation "any person who performs health care services for and under the control and direction of any public or private employer which provides health care services for wages or other remuneration." N.Y. LAB. LAW § 741(1)(a). The New York Court of Appeals has clarified that Section 741 "is meant to safeguard only those employees who are qualified by virtue of training and/or experience to make knowledgeable judgments as to the quality of patient care, and whose jobs require them to make these judgments." *Reddington v. Staten Island Univ. Hosp.*, 11 N.Y.3d 80, 93 (2008). Plaintiff's pleadings make clear that he was a maintenance worker at Brookhaven. There is no allegation that he ever served, or was qualified to serve, in any capacity as a health care provider. Accordingly, Plaintiff is unable to state a claim under NYLL § 741, and the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be GRANTED with respect to this claim.

---

6   The Court does not address whether Plaintiff has adequately pleaded the other elements of his Section 740 claim.

F.      **Plaintiff's Remaining Claims**[7]

Page 4 of Plaintiff's EDNY Form Discrimination Complaint lists several purported other bases for jurisdiction, including "195," "460," "704," "876," "880," "2803," as well as several other indecipherable notations.  The Court will attempt to briefly address Plaintiff's remaining claims to the extent they can be identified.

To the extent the "195" stands for New York Labor Law § 195, Plaintiff fails to state a claim.  "New York Labor Law section 195(1) requires employers to provide employees with wage notices within ten business days of the start of employment."  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 509 (S.D.N.Y. 2017), *aff'd*, No. 17-3356-CV, 2018 WL 5098817 (2d Cir. Oct. 18, 2018) (quoting *Kone* v. *Joy Constr. Corp.*, No. 15 Civ. 1328, 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016)).  The other subsections of Section 195 similarly pertain to employer recordkeeping and the provision of wage statements to employees.  *See, e.g.*, N.Y. LAB. LAW §§ 195(3)-(4).  The statute creates several other duties with which employers must comply, including employee notification.  *See, e.g.*, *id*. §§ 195(2), (6).  There is not a single allegation in Plaintiff's pleadings concerning any failure of Defendants to maintain or provide certain wage records and statements, or to fulfill any other duty created by the statute.  Accordingly, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be GRANTED to the extent that Plaintiff is raising a claim under NYLL § 195.

To the extent "460" stands for New York Labor Law § 460, Plaintiff fails to state a claim.  Section 460 of the Labor Law authorizes the Commissioner of Labor to "seize and impound any explosives found within this state."  N.Y. LAB. LAW § 460(1).  Nothing in Plaintiff's pleadings

---

[7]   In a somewhat confusing opposition memorandum, Plaintiff attempts to address Defendants' treatment of these additional causes of action.  He appears to disavow that he has pleaded some of them.  *See* Pl.'s Opp'n. at 17-21.  In an abundance of caution, the Court addresses each of these potential claims to the extent it is able to identify their statutory bases.

mentions explosives nor could any inference be drawn which implicates explosives or their seizure.  Accordingly, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be GRANTED to the extent Plaintiff is asserting a claim under NYLL § 460(1).

To the extent "704" stands for New York Labor Law § 704, Plaintiff also fails to state a claim.  Section 704 of the Labor Law prohibits employers from engaging in behavior meant to dissuade or promote union activity and collective bargaining.  *See generally* N.Y. LAB. LAW §§ 704(1)-(11).  Nothing in Plaintiff's pleadings mentions or touches upon anyone's participation, non-participation, or intent to participate in collective bargaining activity, or on Defendants' conduct with respect to such activity.  Accordingly, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be GRANTED to the extent Plaintiff is asserting a claim under NYLL § 704.

To the extent "876" and "880" stand for Sections 876 and 880 of the New York Labor Law, Plaintiff has failed to state a claim under either provision.  Section 876 of the Labor Law requires employers to post and provide certain information regarding toxic substances found in the workplace.  *See generally* N.Y. LAB. LAW §§ 876(1)-(8).  Section 880 creates an administrative remedy for employees who believe they have been retaliated against for exercising their rights to certain information regarding toxic substances pursuant to Section 876. Because Plaintiff's pleadings state nothing as to toxic substances, or anything that could conceivably fall within the universe of either of these statutes, the Court respectfully recommends that Defendants' motion with respect to these claims be GRANTED.

To the extent that "2803" stands for New York Public Health Law § 2803, Plaintiff has failed to state a claim.  Section 2803 concerns the powers of the Commissioner of the

Department of Health.  This statute has no relevance to anything in Plaintiff's pleadings; moreover, it is not clear how Plaintiff could even bring a claim under this statute.  Several subsections of Section 2803 do touch on patients' rights (Section 2803-C) and reporting incidents in medical facilities (Sections 2803-D – E).  However, Plaintiff's pleadings fail to assert facts sufficient to implicate liability under any of these statutes, if there is a private right of action in the first place.  The Court respectfully recommends that Defendants' motion to dismiss with respect to these claims be GRANTED to the extent Plaintiff is asserting a claim under New York Public Health Law § 2803.

### G.    Leave to Re-Plead

The Court has considered whether the Plaintiff should be given an opportunity to re-plead his various claims against the Defendants.  "When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Aquino v. Prudential Life & Cas. Ins. Co.,* 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005); *see Thompson v. Carter,* 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them.").  A court should only deny a *pro se* plaintiff leave to amend when "it is 'beyond doubt that the plaintiff can provide no set of facts in support' of his amended claims."  *Pangburn v. Culbertson,* 200 F.3d 65, 71 (2d Cir. 1999) (quoting *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)).

In his opposition to Defendants' motion to dismiss, pro se Plaintiff Klein states that "Plaintiff would request leave to amend complaint if the court is dissatisfied with its own form supplying pro se litigants that was filed timely and in compliance with the courts clerks' office."

Pl.'s Opp'n at 9.  This appears to be some recognition on the Plaintiff's part that he may need to request that he be permitted to amend his pleadings.  In light of the liberal standard noted above, the Court respectfully recommends to Judge Seybert that Plaintiff be given leave to amend his Complaint with respect to (1) his ADEA retaliation claim and (2) his claim under NYLL § 740.  This Court further  respectfully recommends that all of Plaintiff's remaining claims be dismissed, with prejudice, as any attempt to re-plead them would be futile.

## V.     CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Defendants' motion to dismiss be GRANTED and that the pro se Plaintiff be granted leave to amend his Complaint as to (1) his ADEA retaliation claim and (2) his claim pursuant to Section 740 of the New York Labor Law.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**<u>Defendants' counsel is directed to serve a copy of this Report and Recommendation forthwith upon the pro se Plaintiff by overnight mail and first-class mail and to file proof of such service on ECF by March 13, 2019</u>**.

**SO ORDERED**.

Dated: Central Islip, New York
      March 9, 2019

<u>/s/ A. Kathleen Tomlinson</u>
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge
