UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ROBERT KLEIN,

                        Plaintiff,                            **REPORT AND**
                                                         **RECOMMENDATION**
                                                     CV 17-4841 (JS)(ARL)

   -against-

BROOKHAVEN HEALTH CARE FACILITY
and THE MCGUIRE GROUP,

                        Defendants.
----------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

Plaintiff,  Robert Klein ("Plaintiff"), commenced this action against Defendants, Brookhaven Health Care Facility ("Brookhaven") and the McGuire Group ("collectively, "Defendants") alleging claims for age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") as well as claims under the New York Labor Law.  Before the Court, on referral from District Judge Seybert, is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  For the reasons set forth below, the undersigned respectfully recommends that Defendants' motion for summary judgment be granted in its entirety.

## BACKGROUND

### A.    Procedural History

On August 17, 2017, Plaintiff commenced this action against Defendants alleging violations of federal and state antidiscrimination laws.  Plaintiff's lawsuit arises out of his

claim that Defendants unlawfully terminated him from his maintenance position because of his age.  He further claims that the Defendants subjected him to retaliation and other forms of unlawful treatment. By report and recommendation dated March 9, 2019, Judge Tomlinson recommended to Judge Seybert that Defendants' motion to dismiss be denied with respect to Plaintiff's claim for age discrimination, but otherwise granted and that the *pro se* Plaintiff be granted leave to amend his Complaint as to (1) his ADEA retaliation claim and (2) his claim pursuant to Section 740 of the New York Labor Law ("NYLL").   March 2019 Report and Recommendation, ECF No. 22.  Judge Seybert adopted the recommendation on March 31, 2019.  ECF No. 28.  Plaintiff filed an amended complaint on April 10, 2019.  ECF No. 26.  From April 2019 through June 2022 the parties engaged in discovery.  On July 13, 2022 the matter was referred to mediation which was ultimately unsuccessful.  ECF No. 74.  Defendants moved for summary judgment on November 17, 2022.  ECF No. 80.   Plaintiff filed his opposition to the motion for summary judgment on February 12, 2023.  ECF No. 85.  By order dated April 27, 2023, the motion was referred to the undersigned for a Report and Recommendation.

### B.    Factual Background

The following facts, drawn from the Amended Complaint, the Defendants' Local Civil Rule 56.1 Statement and the attached exhibits ("Def. Rule 56.1", ECF No. 80-28) and Plaintiff's Opposition Response Statement to Defendants Statement of Material Fact In Summary Judgment ("Pl. Opp. to Rule 56.1", ECF No. 85-14),[1] are construed in the light most favorable to the non-

---

[1] Although Plaintiff has failed to technically comply with Local Rule 56.1(b), he did provide his own factual account of the case.  Given Plaintiff's pro se status, the Court will "examine the record to determine whether there are any triable issues of material fact, notwithstanding the fact that [Plaintiff] did not follow Local Civil Rule 56.1." *Cain v. Atelier Esthetique Institute of Esthetics, Inc.*, 182 F. Supp. 3d 54, 63 (S.D.N.Y. 2016); *see Thigpen v. Bd. of Trs. of Local 807 Labor-Mgmt. Pension Fund*, No. 18-CV-162 (PKC) (LB), 2019 U.S. Dist. LEXIS 167874, 2019 WL 4756029, at *1 (E.D.N.Y. Sept. 29, 2019) (declining to deem defendants' 56.1 statement admitted when plaintiff "provide[d] her own factual account of the case and attached numerous, non-duplicative exhibits").

moving party.  *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).  To provide a context for this determination, the Court has included several of the parties' allegations or contentions and certain facts set forth in Judge Tomlinson's Report and Recommendation which are adopted by this Court for purposes of completeness.  The facts are undisputed except where otherwise noted.

Plaintiff Robert Klein was employed in the maintenance department at Brookhaven from September 2009 through September 2016.  Def. Rule 56.1 Stmt. ¶ 47.  Plaintiff's date of birth is February 12, 1951, and thus he was 58 when he was hired.  *Id*. at ¶ 46.  Maintenance employees at Brookhaven are responsible for general upkeep of the Brookhaven facility and report directly to the Facility's Environmental Services Manager. Gaines Decl. ¶ 11, ECF No. 80-31. Brookhaven is a residential healthcare facility located in East Patchogue, New York, that provides skilled nursing, rehabilitative therapy, and other medical services to elderly patients. *Id*. at ¶ 5.

Judge Tomlinson provided the following summary of Plaintiff's claims in the March 2019 Report and Recommendation:

> Plaintiff alleges that on September 7, 2016, while he was employed in the maintenance department at Brookhaven, Administrator Debbie Gaines ("Gaines") called Maintenance Supervisor Shaun Patrick ("Patrick"), Director of Nursing Kellie Burridge ("Burridge") and the Plaintiff into a conference room.  DHR Compl. at 5.  Plaintiff states that Gaines informed the group that someone had used a company work phone to visit a pornographic website between noon and 5 p.m. on September 5, 2016 and Gaines asked if Plaintiff had been on duty and in possession of the specific phone on that date. *Id.* at 5-6. Plaintiff informed Gaines that he had been in possession of the phone; however, he had left the phone unattended in the maintenance shop when charging it and while he was doing his maintenance "rounds." *Id*. at 5. Plaintiff alleges that he further informed Gaines that he did not know how to work the phone, and at times even had to ask others how to work the phone. *Id*. at 5-6. Plaintiff states that he was then accused by Gaines of visiting the website in violation of a zero-tolerance company policy against such behavior and was told that as a result, he could either choose to resign and collect unemployment or be fired. *Id*. at 6. Plaintiff stated that he would not resign since he did not visit the website

3

and Gaines responded that "she ha[d] to let [Plaintiff] go." *Id*. According to the Plaintiff, "Shaun [Patrick] and Kellie [Burridge] looked in shock over the whole ordeal." *Id*. March 2019 Report and Recommendation at 3.

Now, following discovery, Defendants have provided the following chronology of events that precipitated Plaintiff's termination.[2] According to Defendants, at approximately 5:00 pm on September 5, 2016, Patrick received a phone call from Joseph Malia.[3] Def. Rule 56.1 ¶ 1. Patrick states that he was informed by Malia that while he was using the "workspeed phone" he checked the internet browsing history on the phone and noticed that approximately twenty pornographic websites had been visited that afternoon.[4] *Id*. at ¶¶ 2, 3. According to Patrick, Malia stated that he was making the report because he did not visit the sites and did not want to be accused of having done so. *Id*. at ¶ 5. The next day, Patrick informed Gaines, who was responsible for addressing employee conduct issues, that Malia had reported that pornography was accessed on

---

[2] Plaintiff objects to the bulk of the undisputed facts set forth in Defendants' statement of undisputed facts on the grounds that Defendants have failed to provide statements from any of the employees involved and have failed to provide a phone log demonstrating the phone call was actually received. Plaintiff's objections can be best construed as an objection on the basis of hearsay, however, these are not valid hearsay objections. Plaintiff is questioning the veracity of the statement without citing evidence to create material issues of fact. Moreover, the statements of Mr. Patrick and Ms. Gaines are not being offered to prove the truth of the matter asserted, but rather the state of mind of Defendants as to the employment decisions regarding Plaintiff. *See McPherson v. New York City Dep't of Educ*. 457 F.3d 211, 216 (2d Cir. 2006) ("[Plaintiff] is attacking the reliability of the evidence supporting [Defendant's] conclusions. In a discrimination case, however, we are decidedly not interested in the truth of the allegations against [P]laintiff. We are interested in what motivated the employer . . . .") (internal quotation marks omitted); *Poppito v Northwell Health, Inc.,* 15-CV-7431 (GRB), 2019 U.S. Dist. LEXIS 134611, 2019 WL 3767504, *3 (E.D.N.Y. Aug. 9, 2019) ("the hearsay statements are offered not for the truth of the matter, but rather to provide insight into defendants' thought process in taking disciplinary action against plaintiff")*; Kaur v. New York City Health and Hospitals Corp*., 688 F. Supp. 2d 317, 323 (S.D.N.Y. 2010)(handwritten notes of personnel decisions not hearsay because not offered for the truth but "[r]ather, the documents are being offered to show the state of mind of Defendant's representatives in making various employment decisions with regard to Plaintiff; the truth of the assertions in the documents is irrelevant"); *Duviella v. JetBlue Airways Corp*., No. 04-CV-5063(NGG)(LB), 2008 U.S. Dist. LEXIS 36979, 2008 WL 1995449, at *5 (E.D.N.Y. May 06, 2008) ("In a discrimination case, the truth of allegations made by an employer against a plaintiff is immaterial, for the ultimate issue is what motivated the employer."). Accordingly, unless otherwise noted, Plaintiff's objection on this basis are overruled and the Court will consider Defendants' factual averments in their Local Rule 56.1 statement to be undisputed inasmuch as they are supported by admissible evidence in the record.

[3] According to Plaintiff, Joseph Malia was "11 years junior" to Plaintiff. Pl Ex. 4, pg. 5.

[4] The workspeed phone is a phone that is left at Brookhaven and passed from one maintenance employee to the next over successive shifts. *Id*. at ¶ 4.

the workspeed phone the previous afternoon. *Id*. at ¶¶ 6, 7.  Patrick then collected the workspeed phone from the maintenance employee on duty at the time, Hugo Rodriguez. *Id*. at ¶ 8.  When Patrick checked the browsing history in an attempt to confirm what Malia had reported he saw that the history had been cleared. *Id*. at ¶¶ 9, 10.  Patrick relayed this information to Gaines. *Id*. at ¶ 11.

Once Gaines was informed of the violation she began gathering facts by interviewing of several employees.[5]  Gaines states she first met with Rodriguez and asked him if he had cleared the browsing history on the workspeed phone before handing it to Patrick.  *Id*. at ¶ 12. According to Gaines, she was informed by Rodriguez that he had not cleared the browsing history on the workspeed phone and therefore she decided that she should interview Jospeh Perugini,[6] the maintenance employee who had worked the immediately preceding shift. *Id*. at ¶¶ 13-15.  Both Patrick and Gaines spoke to Perugini and asked him if he cleared the browsing history on the workspeed phone during his shift.  *Id*. at ¶¶ 16, 20.  According to Patrick, Perugini admitted that did clear the browsing history, and informed Patrick that he always clears the browsing history on the phone upon receiving it from the employee who had worked the previous shift, and he did not clear it for any other reason that evening.  *Id*. at ¶¶ 17, 18.  Upon learning that Perugini had cleared the browsing history Gaines decided to interview Malia about his initial report since Malia had been on duty immediately prior to Perugini on September 5, 2016.  *Id*. at ¶¶ 22, 23.  Gaines claims that during the interview, Malia told her that shortly after his shift began, he collected the phone from Plaintiff, whose shift was ending  and that he happened to check the browsing history around 5:00 pm, discovered that pornographic sites had

---

[5] Defendants have not provided statements from any of the employees interviewed, but rather rely solely upon the statements of Patrick and Gaines.
[6] According to Plaintiff, Joe Perugini "was over 20 years junior to plaintiff."  Pl. Mem. at 22.

been viewed that afternoon (according to the timestamp), and immediately reported what he saw to Patrick by phone. *Id.* at ¶¶ 24, 25. According to Gaines, during the interview, Malia assured her that he did not view the pornographic sites and did not want to be accused of doing so. *Id.* at ¶ 26. After speaking with Malia, Gaines decided that Plaintiff should be interviewed next because he had worked the shift immediately prior to Malia's shift and thus would have been in possession of the workspeed phone at the time the pornographic sites were accessed. *Id.* at ¶ 27.

Gaines, Patrick, and Burridge met with Plaintiff on September 8, 2016. *Id.* at ¶ 28. During the meeting, Plaintiff confirmed that he did work from approximately 7:00 am to 3:30 pm on September 5, 2016. *Id.* at ¶ 29. During the meeting, Plaintiff confirmed that he had possession of the workspeed phone during the entire shift, except when it was charging in the maintenance shop. *Id.* at ¶ 30. Defendants contend that the maintenance shop is a secure location within the Brookhaven facility that is not generally accessible to patients or non-maintenance employees, *id.* at ¶ 31, however, Plaintiff argues that the maintenance shop is not locked and is open to any employee throughout the day. Pl. Opp. to Rule 56.1, at 31. During the meeting, Plaintiff denied that he viewed any pornographic websites on the workspeed phone. Def. Rule 56.1 at ¶ 32. Gaines and Patrick contend that Plaintiff provided no explanation for how the websites could have appeared in the phone's browsing history if he did not view them, nor did he indicate who else could have viewed the sites during his shift. *Id.* at ¶ 33. After interviewing Plaintiff, Gaines decided that she had gathered sufficient information to take appropriate action with respect to Malia's report. *Id.* at ¶ 34.

According to Gaines, she concluded that Plaintiff had visited the pornographic websites on the Company's phone because the investigation revealed that Plaintiff was the only person, other than Malia, who had access to the phone during the afternoon of September 5, 2016. *Id.* at

6

¶ 35.  It is her position that she had no reason to believe that Malia's report was false – or that Malia himself had viewed the sites – given that Malia was the one who brought the issue to the attention of management and specifically stated, repeatedly, that his reason for doing so was to avoid being blamed for something he did not do.  *Id*. at ¶ 36.  Gaines believed that Plaintiff, failed to provide an explanation for how the websites could have appeared on the phone if he did not view them and provided no indication of  who else could have viewed them.  *Id*. at ¶ 37. Under Brookhaven policy, any employee found to be abusing the privilege of telecommunications devices is subject to disciplinary action up to and including termination from employment, and Plaintiff acknowledged receipt of this policy upon commencement of his employment. *Id*. at ¶ 38.  Gaines concluded that viewing pornography on a Company cell phone clearly violates this policy and is completely inappropriate in any event. *Id*. at ¶ 39.  Gaines offered Plaintiff the opportunity to resign from employment.  *Id*. at ¶ 40.  Plaintiff declined to resign. *Id*. at ¶ 41.  Gaines therefore decided to terminate Plaintiff's employment because he was found to have visited the pornographic websites on the workspeed phone in violation of Company policy. *Id*. at ¶ 42.  Plaintiff's termination, and the reason for it, was confirmed by letter from Gaines to Plaintiff dated September 20, 2016.  *Id*. at ¶ 43.  Gaines, the ultimate decisionmaker with respect to the termination of Plaintiff's employment, was 64 years old at the time she made the decision to terminate Plaintiff's employment. *Id*. at ¶¶ 44, 45.

Following his termination, Plaintiff filed a complaint with the New York State Division of Human Rights on or about October 6, 2016.  *See* DHR Compl. at 1. In May 18, 2017, the EEOC issued Plaintiff a formal Notice of Dismissal and Right to Sue, in which it adopted the findings of the NYSDHR. *See* Compl. at 8.

**DISCUSSION**

7

A.      **Standards of Law**

1.  **Summary Judgment**

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'  A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In determining whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (*per curiam*)); *see Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (same).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)); *see also Wright v. Goord,* 554 F.3d 255, 266 (2d Cir. 2009).  The nonmoving party cannot survive summary judgment by casting mere "metaphysical doubt" upon the evidence produced by the moving party.  *Matsushita*, 475 U.S. at 586.  Summary judgment is appropriate when the moving party can show that "little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd.*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted).  However, "the judge's role in reviewing a motion for summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a

8

genuine issue for trial." *Anderson*, 477 U.S. at 249.  "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  *Gallo*, 22 F.3d at 1224.

"When the party opposing summary judgment is *pro se*, the Court must read that party's papers liberally and interpret them 'to raise the strongest arguments that they suggest.'" *Ayazi v. United Fed'n of Teachers, Local 2,* No. 99 CV 8222, 2011 U.S. Dist. LEXIS 25734, 2011 WL 888053, at *6 (E.D.N.Y. Mar. 14, 2011) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). "[H]owever, a *pro se* party's bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." *Ayazi*, 2011 U.S. Dist. LEXIS 25734, 2011 WL 888053, at *6 (citing *Thompson v. Tracy*, No. 00 CV 8360, 2008 U.S. Dist. LEXIS 4228, 2008 WL 190449, at *5 (S.D.N.Y. Jan.17, 2008)); *Chiari v. N.Y. Racing Ass'n, Inc.,* 972 F. Supp. 2d 346, 361 (E.D.N.Y. 2013).  "Notwithstanding the sympathetic reading accorded papers submitted by *pro se* litigants, in order to resist successfully summary judgment in an age discrimination case, a *pro se* litigant must produce 'sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's age was the real reason' for the challenged employment action." *Verone v. Catskill Regional Off-Track Betting Corp.,* 10 F. Supp. 2d 372, 375 (S.D.N.Y. 1998) (quoting *Woroski v. Nashua Corp.*, 31 F.3d 105, 109-110 (2d Cir. 1994); *Grady v. Affiliated Central, Inc*., 130 F.3d 553, 559 (2d Cir. 1997)).

## 2.  Age Discrimination and Retaliation

The ADEA makes it "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29

U.S.C. § 623(a)(1).   In the absence of direct evidence of discriminatory conduct, Plaintiff's claims for employment discrimination under the ADEA are analyzed "under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)."  *Lively v. WAFRA Inv. Advisory Grp., Inc*., 6 F.4th 293, 301, 305 (2d Cir. 2021). Under *McDonnell Douglas* and its progeny, (1) a plaintiff must first establish a prima facie case of discrimination; (2) the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions; if the employer does so, the *McDonnell Douglas* framework and its presumptions and burdens disappear, and, thus, (3) the burden shifts back to the plaintiff to show that the employer's reason is pretextual and that it masks the employer's true discriminatory reason. *See Patterson v. City of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004); *Gorzynski v. JetBlue Airways Corp.,* 596 F.3d 93, 106-07 (2d Cir. 2010) (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 180, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009)).  Although intermediate evidentiary burdens shift back and forth under this framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000); *see Gorzynski*, 596 F.3d at 107.

To establish a prima facie case of age discrimination under the ADEA, the plaintiff must demonstrate that "(1) he was within the protected age group . . .; (2) he was qualified for the position; (3) he experienced an adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of

discrimination." *Summit v. Equinox Holdings, Inc.,* No. 20 Civ. 4905 (PAE), 2022 U.S. Dist. LEXIS 129890, 2022 WL 2872273 (S.D.N.Y. July 21, 2022).

With respect to Plaintiff's claim of retaliation under the ADEA, "[t]o make out a prima facie case of retaliation under the ADEA, a plaintiff must establish that: (1) he participated in a protected activity under the ADEA; (2) participation in the protected activity was known to the employer; (3) the employer thereafter subjected him to a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action—i.e., that a retaliatory motive played a part in the adverse action." *Yagudaev v. Credit Agricole Am. Servs., Inc*., No. 18 Civ. 513 (PAE), 2020 U.S. Dist. LEXIS 20328, at *37, 2020 WL 583929 (S.D.N.Y. Feb. 5, 2020) (citing *Gorzynski*, 596 F.3d at 110). "As with discrimination claims, courts analyze ADEA retaliation claims using the *McDonnell Douglas* burden-shifting standard." *Id*.

### B.    Plaintiff's Age Discrimination Claim

Defendants argue that the Court should grant summary judgment on Plaintiff's claim of age discrimination since "Plaintiff cannot meet his initial prima facie burden because the record is devoid of evidencing showing that his employment was terminated under circumstances giving rise to an inference of discrimination. Further, the record shows that his employment was terminated for a legitimate, non-discriminatory reason – namely, that he was found to have visited pornographic websites on a company cellphone – and Plaintiff cannot establish that this reason is pretextual." Def. Mem. at 12.

### 1.  Prima Facie Claim of Discrimination

11

Defendants concede Plaintiff has satisfied the first three elements necessary to set forth a prima facie claim for age discrimination but argue that "his claim fails at the fourth element because the record is devoid of evidence showing that his employment was terminated under circumstances giving rise to an inference of age discrimination."  Def. Mem. at 12.  In her report and recommendation addressed to Defendants' motion to dismiss on the same grounds, Judge Tomlinson found that Plaintiff had "sufficiently alleged several 'bits and pieces' of information from which, taken together, Plaintiff can meet his burden as to the existence of an inference of discrimination.  First, Plaintiff asserts that at the July 25, 2016 maintenance meeting – which was only a month and a half prior to his termination – Gaines looked Plaintiff 'straight in the eye' and 'asked if any[one] would think of being let go as cut backs [were] being considered.' DHR Compl. at 9. Plaintiff states that he believed Gaines was waiting for a response from him. *Id.* Secondly, Plaintiff states he was asked by other employees, including his supervisor, when he was going to retire, and he avers that he was probably the oldest employee at Brookhaven. . . . In addition, the circumstances under which Plaintiff was (1) informed that Brookhaven had discovered that someone had misused the company phone and (2) immediately terminated Plaintiff despite his denials and without any further investigation, are problematic." March 2019 Report and Recommendation at 14-15.

First, Defendants have pointed to deposition testimony undermining Plaintiff's claim for age discrimination.  In Plaintiff's deposition he testified that he was not aware of a single age-related comment from Gaines.  Def. Rule 56.1 Stmt. ¶ 48.  Plaintiff also testified that

> Q.  With regard to your claim under the ADEA, why do you believe you were discriminated against on the basis of your age?
>
> A.  My age was a factor because the person who brought the allegation of me being on the work-speed phone was well under my age. That's one part of it, and if you

go down the list here, I was totally qualified for the position. I mean, it's self-explanatory if you want me to just keep on reading.

\*  \*  \*

Q.  Why else do you believe you were terminated because of your age?

A.   I am the oldest or was the oldest at that particular time, other than I believe the Administrator might be a year older than me, and they were talking about layoffs and age evidently has its limits, which I don't understand it.

Klein Tr. 211-212, 214, ECF No. 80-2.  Plaintiff offers nothing more than his own subjective belief that discrimination was the basis for his termination.[7]  "The subjective belief of [Plaintiff] that there was discrimination afoot—'however strongly felt'—is insufficient to satisfy his burden at the pleading stage."" *Lenart v. Coach Inc.,* 131 F. Supp. 3d 61 (S.D.N.Y. 2015) (quoting *Doe v. Columbia University*, 101 F.Supp.3d 376, 371 (S.D.N.Y. 2015)); *see also Dooley v. JetBlue Airways Corp.*, No. 14-CV-4432 (JMF), 2015 U.S. Dist. LEXIS 43370, 2015 WL 1514955, at *3 (S.D.N.Y. Apr. 1, 2015) (holding that the plaintiff's "repeated assertions that [the defendant's] actions can only be the product of discrimination lack any factual support and, thus, do not constitute circumstances giving rise to a plausible inference of . . . discriminatory intent"); *see also Gorzynski,*  596 F.3d at 101 ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."); *Smalls v. Allstate Ins. Co.,* 396 F. Supp. 2d 364, 371-72 (S.D.N.Y. 2005) ("plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be drawn") (citations omitted).

---

[7] Plaintiff argues that Defendants engaged in a pattern of termination of employees based upon age, however, his argument with respect to each of the purported comparators is not supported by facts.  Plaintiff argues that Dave Noran was termination in 2013 and replaced by a younger employee, however no facts regarding the circumstances of his termination are presented.  Pl. Mem. at 37.  With respect to Plaintiff's claim that Gail Ciecirski was termination and replaced by a younger employee, Pl. Mem. at 36, Ms. Ciecirski herself testified that that she was fired after raising with Ms. Gaines issues concerning Ms. Gaines' son. (Ciecirski Dec1. 7 16, 18 ("[Ms. Gaines] counselled me that if anyone brings something of this nature up involving any of her family members, they would be terminated, and shortly thereafter I was terminated, ... [following] my complaining to Debbie on the above issues [involving her family members]").

Next, Defendants argues that Plaintiff, at 58 years old, was well within the protected class when first hired, which undermines his claim of age discrimination.  Def. Rule 56.1 ¶ 46. Indeed, numerous courts have concluded that a Plaintiff's age discrimination claim is undermined where Plaintiff was already a member of the protected age class when Defendants hired him. *See, e.g., Stanojev v. Ebasco Servs., Inc.*, 643 F.2d 914, 921 (2d Cir. 1981) (finding no direct evidence of age discrimination when Plaintiff "was taken into the company at the executive level when he was already 11 years into the [protected] age bracket"); *Spires v. Metlife Grp., Inc.,* No. 18-CV-4464 (RA), 2019 U.S. Dist. LEXIS 160181, 2019 WL 4464393, at *8 (S.D.N.Y. Sept. 18, 2019) ("Although the ADEA does not necessarily foreclose an age-discrimination claim when a plaintiff was over forty years old when first hired, this substantially weakens any inference of discrimination on Defendants' part"); *Snowden v. Trs. of Columbia Univ.,* 12 Civ. 3095 (GBD), 2014 U.S. Dist. LEXIS 42543, 2014 WL 1274514, at *8 (S.D.N.Y. Mar. 26, 2014), aff'd, 612 F. App'x 7 (2d Cir. 2015) ("Where, as here, an employee is already a member of the protected class when hired, any inference of age discrimination when her employment is terminated is undermined"); *Melnyk v. Adria Labs*, 799 F. Supp. 301, 319 (W.D.N.Y. 1992) ("[I]t is difficult to justify a conclusion of age discrimination when [the defendant] hired [the plaintiff] just one year prior to her entry into the protected class").

Third, Defendants note that Plaintiff, who was 58 when hired, testified that Gaines, the individual responsible for Plaintiff's termination, was one of the "oldest" in the facility,  (Klein Tr. 196: 11-14, 200:10-16) ("her and me are probably the oldest at that particular time, I don't think there were any other older employees at the time").  Courts routinely conclude that "invidious discrimination is unlikely" when "the person who made the termination decision is in the same protected class as plaintiff." *Zuffante v. Elderplan, Inc.,* No. 02-CV-3250, 2004 WL

744858, at *6 (S.D.N.Y. March 31, 2004); *see also Hossain v. Manhattan Sheraton Corp*., No. 1:20-CV-3966 (DG)(PK), 2022 U.S. Dist. LEXIS 158694, at *32 (E.D.N.Y. Aug. 31, 2022) ("[f]urther weighing against an inference of age discrimination is the fact that [Defendant who] recommended his termination, was 54 years old at the time of Plaintiff's termination and a member of the same protected class as Plaintiff"); *Mathews v. Huntington*, 499 F. Supp. 2d 258, 267 (E.D.N.Y. 2007) ("although not dispositive, the fact that . . . the decisionmakers with regard to plaintiff's firing . . . were forty-five and fifty-six years old, respectively, weakens any inference that the decision to fire plaintiff was based on his age").  Here, the decision to terminate Plaintiff was made by Gaines, who was 64 years old at the time she made the decision to terminate Plaintiff.  Def. Rule 56.1Stmt. ¶ 45.

Finally, when asked if he is aware of any age-related comments, Plaintiff only pointed to two instances in which he was asked about his retirement plans: once by his supervisor, Mr. Patrick, and once by a supposed Brookhaven employee Plaintiff identifies as "Judy." (Klein Tr. 88:25-89:7).  These isolated comments regarding Plaintiff's retirement plans do not raise an inference of discrimination, as "discussion of retirement is common in offices, even between supervisors and employees, and is typically unrelated to age discrimination." *Hamilton v. Mount Sinai Hosp*., 528 F. Supp. 2d 431, 447 (S.D.N.Y. 2007), aff'd, 331 F. App'x 874 (2d Cir. 2009) (finding comments by supervisors regarding retirement of workers, including plaintiff, insufficient to raise an inference of discrimination); *see also Hossain v. Manhattan Sheraton Corp*., No. 1:20-CV-3966 (DG)(PK), 2022 U.S. Dist. LEXIS 158694, *30 (E.D.N.Y. Aug. 31, 2022) (discussion of retirement "sheds no light on whether Plaintiff was terminated for discriminatory reasons"); *Boonmalert v. City of N.Y.*, No. 16-CV-4171 (KMW)(KNF), 2017 U.S. Dist. LEXIS 56409, 2017 WL 1378274, at *4 (S.D.N.Y. Apr. 12, 2017) ("[D]iscussion of

retirement is common in offices, even between supervisors and employees, and is typically unrelated to age discrimination") (quoting *Hamilton*, 528 F. Supp. 2d at 447).

In light of Plaintiff's own testimony that no actionable comments had been made by anyone in his presence regarding his age, his own age at the time of his hiring and the age of his supervisor at the time of his termination, the Court is unable to conclude that Plaintiff's termination occurred under circumstances that give rise to an inference of discrimination. Therefore, Plaintiff has failed to set forth a prima facie case of discrimination.

## 2. Legitimate Non-Discriminatory Reason for the Termination

Even if this Court were to conclude that Plaintiff had set forth a prima facie case of discrimination, Defendants have met their burden to "articulate some legitimate, nondiscriminatory reason" for his termination.[8] *Weiss v. Quinnipiac Univ.*, No. 3:20-CV-00375 (JCH), 2021 U.S. Dist. LEXIS 175216, 2021 WL 4193073, at *4 (D. Conn. Sept. 15, 2021).

Defendants contend that the decision to terminate Plaintiff's employment was based on legitimate, non-discriminatory reason because his superior, Gaines, reasonably concluded, after an investigation, that Plaintiff visited pornographic websites on a company cell phone during his shift on September 5, 2016. Def. Rule 56.1Stmt. ¶¶ 35-37. She further concluded that this

---

[8] "Importantly, Defendant need not prove these reasons are the actual reasons for the adverse employment action; rather, 'by producing evidence (whether ultimately persuasive or not) of nondiscriminatory reasons,' Defendant sustains its burden under the second step of the *McDonnell Douglas* framework." *Benoit*, 2022 U.S. Dist. LEXIS 136816, 2022 WL 3043240, at *8 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993); *see also Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) ("The defendant need not persuade the court that it was actually motivated by the proffered reason[]. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff") (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981))); *Douglas v. Hip Centralized Lab. Servs., Inc.*, No. 03–CV–205, 2005 WL 1074959, at *5 (E.D.N.Y. Apr. 29, 2005) ("Defendant's belief that Plaintiff violated company policy . . . constitutes a legitimate, nondiscriminatory reason for terminating Plaintiff's employment").

conduct amounted to misuse of a Company telecommunication device, which constitutes a violation of Company policy warranting termination from employment. *Id*. at ¶¶ 38-39; *see also* Torcello Aff. Exh. B (prohibiting misuse of company telecommunication systems, including company supplied cell phones, and providing that "any employee found to be abusing the privilege of any telecommunication devices" may be subject to disciplinary actions "up to and including immediate termination")). Accordingly, based on the results of the investigation, Plaintiff's employment was terminated.  *Id*. at ¶ 42.  "[N]umerous courts have held that an employer may terminate an employee who violates company policies prohibiting the use of its computer systems for sending and receiving sexually explicit materials."  *Glenwright v. Xerox Corp*., 832 F. Supp. 2d 268, 275 (W.D.N.Y. 2011) (collecting cases).  Accordingly, Defendants have articulated a legitimate non-discriminatory reason for Plaintiff's termination.

### 3.  Pretext

Once Defendants have offered a legitimate, nondiscriminatory basis for their action, Plaintiff must offer evidence showing that Defendants' stated reason is merely pretextual.  Under *McDonnell Douglas*, the plaintiff 'must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Summit,* 2022 WL 2872273, at *9 (quoting *Gorzynski,* 596 F.3d at 106 (discussing the prima facie case in the context of age discrimination)).  "A plaintiff may demonstrate pretext by showing 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action.'" *Carr v. New York City Transit Auth*., No. 16-CV-9957 (VSB), 2022 U.S. Dist. LEXIS 48731, 2022 WL 824367, at *9 (S.D.N.Y. Mar. 18, 2022) (quoting *Gokhberg v. PNC Bank, N.A*., 17-cv-00276 (DLI)(VMS), 2021 U.S. Dist. LEXIS 26948, 2021 WL 421993, at *7 (E.D.N.Y. Jan. 6, 2021)).  To show

17

pretext, "a plaintiff must offer evidence that age discrimination was the 'but-for' cause of the challenged actions rather than 'just [being] a contributing or motivating factor.'" *Robles v. Cox & Co*., 987 F. Supp. 2d 199, 206–07 (E.D.N.Y. 2013) (quoting *Gross*, 557 U.S. at 176). "Further, a plaintiff must offer hard evidence, not conclusory supposition, that the defendant's articulated rationale is a pretext for discrimination." *Id*. (citations omitted). "A reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." *Id.* (citations omitted).

Defendants argue that the record is devoid of evidence to demonstrate pretext.  According to Defendants, despite Plaintiff's repeated assertions that he did not view pornography on the workspeed phone, it is settled law, that  "[a]bsent discrimination, an employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all." *Droutman v. New York Blood Ctr., Inc*., No. 03–CV–5384, 2005 WL 1796120, at *9 (E.D.N.Y. July 27, 2005) (citations omitted). Where, as here, an employer has a good faith belief that an employee engaged in misconduct, "the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination." *Id.; see also Delaney v. Bank of Am. Corp.,* 766 F.3d 163, 169 (2d Cir. 2014) ("While we must ensure that employers do not act in a discriminatory fashion, we do not sit as a super-personnel department that reexamines an entity's business decisions") (quotation and citation omitted); *Macshane v. City of New York, No. 6-CV-6024 (RRM)(RML),* 2015 U.S. Dist. LEXIS 36099, 2015 WL 1298423, at *18-19 (E.D.N.Y. Mar. 23, 2015) ("imperfect assessments" and "mistaken conclusions" do not necessarily support finding of pretext for adverse actions);  *Rodriguez v. City of New York,* 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008) ("the fact that an employee disagrees with the results of an employer's decision regarding termination, or even has evidence that the decision was

18

objectively incorrect or was based on a faulty investigation, does not automatically demonstrate, by itself, that the employer's proffered reasons are a pretext for termination").

Nevertheless, Plaintiff challenges the investigation as flawed.  See, e.g., Pl. Mem. at 18-21, 24, 25, 29, 39 . Plaintiff challenges the result of the investigation relied upon by Defendants because "NO investigations, only 'interviews' and 'contacted', NO reports from the provider, NO report from the internet, NO stamp report on time, NO report from corporate who monitors the system, NO report from the IT department, NO security camera footage, NO written statements from Joe Malia, Joe Perugini, or Hugo Rodriquez or IF in fact they reviewed notes/statements and agreed with them." Pl. Opp. to Rule 56.2 Stmt. ¶ 35.[9]  However, without more, the irregularities identified in the investigation process are insufficient to create material issues of fact because Plaintiff has failed to connect the irregularities to his claim of age discrimination.  *See, e.g., Bailey v. Nexstar Broad., Inc.*, No. 19-CV 671, 2021 U.S. Dist. LEXIS 42183, 2021 WL 848787, at *16 (D. Conn. Mar. 6, 2021) (noting on a motion for summary judgment that procedural irregularities do not establish a discrimination claim where the plaintiff "has not produced evidence tending to show that the shortcuts taken or the conclusions reached during the investigative process were because of any pre-conceived gender bias, beyond [his] own speculation about what motivated the decision"); *Marquez v. Hoffman*, No. 18-CV-7315, 2021 U.S. Dist. LEXIS 62994, 2021 WL 1226981, at *14 (S.D.N.Y. Mar. 31, 2021) (noting that "[a] 'clearly irregular investigative adjudicative process' can . . . serve as evidence of discriminatory intent when combined with other factors," and dismissing claims of race discrimination where the plaintiff "failed to adequately allege that her race was a motivating factor in the decision to terminate her employment" (citation omitted)).

---

[9] Variations on this refrain are repeated throughout Plaintiff's Opp. to Rule 56.1 Stmt.  *See, e.g.,* ¶¶ 11-35.

Plaintiff also argues that similarly situated employees were not treated similarly, which he claims supports his position that the reason offered for his termination was a pretext. Pl. Mem. at 33-36. "A showing that similarly situated employees belonging to a different [protected class] received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for . . . discrimination." *Osekavage v. Sam's East, Inc.*, No. 19-CV-11778 (PMH), 2022 U.S. Dist. LEXIS 138184, 2022 WL 3084320, at *8 (S.D.N.Y. Aug. 3, 2022) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000)).

In his attempt to identify comparators who were treated more favorably, Plaintiff first identifies Chris Gaines, the administrator's son, who allegedly was found sleeping in his car during working hours and had stolen a trimmer tool from the maintenance shop. Pl. Mem. at 35-36. According to Plaintiff, he brought this activity to the attention of Defendants and no action was taken. *Id.* However, this conduct is not substantially similar to the misconduct which lead to Plaintiff's termination and therefore Chris Gaines is not a similarly situated employee belonging to a different class. *See, e.g., Weslowski v. Zugibe,* 96 F. Supp. 3d 308, 321 (S.D.N.Y. 2015) (collecting cases), aff'd, 626 F. App'x 20 (2d Cir. 2015); *see also Spiess v. Xerox Corporation,* No. 08-CV-6211, 2011 U.S. Dist. LEXIS 79625, 2011 WL 2973625 (W.D.N.Y. July 21, 2011) (dismissing age discrimination case because plaintiff failed "to submit proof to establish that other, significantly younger, employees participated in the same or substantially similar conduct and were treated more favorably than he was, a necessary condition for establishing an inference of age bias" where the alleged misconduct was the distribution of sexually explicit materials); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) ("If the difference between the plaintiff's conduct and that of those alleged to be similarly situated

accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis").

Plaintiff also argues that Defendants treated younger employees more favorably because they accepted the word of the younger employees in the course of the investigation. Pl. Mem. at 33. Plaintiff notes that Malia and Perguini both denied visiting the websites when questioned and were not terminated or reprimanded in any way despite acknowledging that they had visited the internet on the workspeed phone. *Id*. Plaintiff similarly denied visiting the sites but was terminated. *See* Pl. Mem. at 39, Pl. Opp. to Rule 56.1 ¶ 32. The Court notes that there were four employees interviewed, all denied involvement, but one was terminated. It is Plaintiff's contention that the only explanation for the different treatment is his age. Defendants argue that "Plaintiff has not produced any admissible evidence to establish this is the case. Instead, the admissible evidence establishes that Ms. Gaines determined Mr. Malia did not visit the pornographic websites." Def. Reply Mem. at 8. Plaintiff's unsupported conclusion that the comparator had committed to same violation cannot stand in the face of the conclusion of an internal investigation finding the contrary. *See Gorzynski,* 596 F.3d at 101 ("Even in the discrimination context . . . a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment."). This is particularly true here, where Plaintiff cannot establish that discrimination was the "but for" cause of his termination. Plaintiff claims in his memorandum in opposition to summary judgment that there was a "conflict between Plaintiff and Ms. Gaines because he complained to HR and corporate headquarters in June 2016 on both Chris Gaines and Debbie Gaines committing fraud. HR brought this to the administrators' attention as well. Pl. Mem. at 38. In addition, Plaintiff admitted at his deposition that he believes his age was only one of multiple reasons for his discharge. *See* Klein Tr. 74:7-15;

198:22-199:6. In such circumstances, courts routinely conclude that a plaintiff cannot establish that discrimination was the "but-for" reason for the termination, as is required to carry a plaintiff's ultimate burden. *See, e.g., Hu v. UGL Servs. Unicco Operations Co.,* 2014 WL 5042150, at *7 (S.D.N.Y. Oct. 9, 2014) (finding plaintiff's admission at his deposition "that there were multiple reasons for his discharge . . . undermines any claim that Plaintiff's age was the but for cause of his discharge"). Thus, Plaintiff has failed to establish the reason for Plaintiff's termination given by Defendants is pretextual.

Accordingly, in light of Plaintiff's failure to establish a prima facie case of discrimination, Defendants articulation of a legitimate non-discriminatory reason for Plaintiff's termination and Plaintiff's failure to demonstrate the reason given was merely pretextual, the undersigned respectfully recommends that Defendants' motion for summary judgment on Plaintiff's claim of age discrimination be granted.

### C.     Retaliation

Plaintiff also asserts a claim for retaliation under the ADEA. As discussed above, "[t]o make out a prima facie case of retaliation under the ADEA, a plaintiff must establish that: (1) he participated in a protected activity under the ADEA; (2) participation in the protected activity was known to the employer; (3) the employer thereafter subjected him to a materially adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action—i.e., that a retaliatory motive played a part in the adverse action." *Yagudaev*, 2020 U.S. Dist. LEXIS 20328, at *37, 2020 WL 583929. Defendants argue that Plaintiff has failed to set forth a prima facie case of retaliation. Def. Mem. at 20. According to Defendants, Plaintiff has failed to demonstrate he participated in protected activity. *Id*. The Court agrees.

Under the ADEA, "a plaintiff engages in protected activity if he has 'a good faith, reasonable belief that he is opposing an employment practice made unlawful by [the ADEA].'" *Lopez v. N.Y.C. Dep't of Educ*., No. 17 Civ. 9205 (RA), 2020 U.S. Dist. LEXIS 133548, 2020 WL 4340947, at *10 (S.D.N.Y. July 28, 2020) (quoting *Kessler v. Westchester Cnty. Dep't of Soc. Servs.,* 461 F.3d 199, 210 (2d Cir. 2006)). "Protected activity under the ADEA includes opposing or charging unlawful practices, or participating in any manner in the investigation, proceedings or litigation of an ADEA claim." *Pocino v. Culkin*, No. 09-CV-3447 (RJD) (RLM), 2010 U.S. Dist. LEXIS 89882, 2010 WL 3516219, at *3 (E.D.N.Y. Aug. 31, 2010); *Dinicola v. Chertoff,* No. 05 CV 4968, 2007 U.S. Dist. LEXIS 35852, 2007 WL 1456224, at *5 (E.D.N.Y. May 16, 2007) ("The retaliatory provisions of both Title VII and ADEA require that the protected activity include some form of opposition to acts made unlawful by their respective statutes"). The ADEA is not an "all-purpose whistleblower statute." *McCalman v. Partners in Care*, No. 01 Civ. 5844 (FM), 2003 U.S. Dist. LEXIS 17211, 2003 WL 22251334, at *6 (S.D.N.Y. Sept. 30, 2003). Judge Tomlinson, in the Report and Recommendation, recommended dismissal of Plaintiff's retaliation claim because Plaintiff has failed to allege that he was engaged in a protected activity under the ADEA. Plaintiff was given the opportunity to replead this claim. The amended complaint did nothing to cure the deficiency identified by Judge Tomlinson.

"Plaintiff has not plausibly alleged that he engaged in protected activity under the ADEA because he has not provided any facts demonstrating that he believed that 'he was opposing an employment practice made unlawful by' the ADEA during his tenure." *Lopez* , 2020 U.S. Dist. LEXIS 133548, at *28, 2020 WL 4340947 (quoting *Kessler v. Westchester Cty. Dep't of Soc.*

*Servs.,* 461 F.3d 199, 210 (2d Cir. 2006)).   In the Amended Complaint Plaintiff alleges that he

made the following complaints which form the basis of his retaliation claim:

> Noticeable Complaints were brought forward. (Substantial and specific danger to the
> public's health and safety brought forward in good faith and common sense) and against
> policy and in violation of law). NOTE: Verbal complaints (as noted in plaintiffs type
> written Complaint (103+- pages) 8 Sep/1 Oct 2016 submitted to the NYSDHR/EEOC)
> Public safety, health, welfare, danger were unlawful policy of BHCF that were opposed.

Am. Compl. page 6, ECF No. 30.   Indeed, when ask at his deposition, if he had complained to

his supervisors that he was the subject of age discrimination he testified as follows:

> Q.  At any point during your employment did you say to either your direct supervisor,
> Mr. Patrick, or Ms. Gaines that you felt that you have been discriminated against because
> of your age?
>
> A.  No, because I never was until the termination part.
>
> Q.  So you didn't believe that you were treated differently based on your age until after
> you were terminated?
>
> A.  Yes, I would say so, yes.

Klein Tr. 223:15-21, ECF No. 80-2.   In light of this testimony, Plaintiff has failed to establish a

prima facie case of retaliation under the ADEA because he has failed to demonstrate that he

engaged in a protected activity under the ADEA -- made complaints regarding discriminatory

employment practices -- prior to his termination.  *See, e.g., D'Antonio v. Petro, Inc*., No. 14-CV-

2697, 2017 U.S. Dist. LEXIS 46762, 2017 WL 1184163, at *11 (E.D.N.Y. Mar. 29, 2017)

("There is no evidence in this record that [Plaintiff] engaged in protected activity vis a vis his age

discrimination claim. Indeed, [Plaintiff] conceded that he never made a complaint about age

discrimination, . . ., and therefore summary judgment is appropriately granted to Defendant on

the ADA retaliation claim"); *Eldaghar v. City of New York Dep't of Citywide Admin. Servs.,* No.

02-CV-09151, 2008 WL 4866042, at *13 (S.D.N.Y. Nov. 7, 2008) (granting summary judgment

on ADEA retaliation claim because Plaintiff "did not engage in protected activity prior to his

termination" and thus "cannot prove that any of the alleged adverse actions he [suffered] … were retaliatory"). Accordingly, the undersigned respectfully recommends that Defendants' motion for summary judgment on Plaintiff's claim of retaliation be granted.

### D.    Plaintiff's NYLL § 740 Claim

Finally, Plaintiff was granted leave to amend his Complaint as to his claim pursuant to Section 740 of the New York Labor Law.   Section 740 of the NYLL provides that "[a]n employer shall not take any retaliatory personnel action against an employee because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." NYLL § 740(2)(a). "To maintain an action under § 740, a plaintiff must: 'establish a violation of a law, rule or regulation, which information must be actual and not merely possible, and (2) demonstrate that the lack of compliance presents a substantial and specific danger to the public health or safety.'" *Cason v. Doe*, No. 2:16-cv-3710 (ADS) (ARL), 2020 U.S. Dist. LEXIS 26286 (E.D.N.Y. Feb. 14, 2020) (quoting *Ulysse v. AAR Aircraft Component Servs.*, 841 F. Supp. 2d 659, 664 (E.D.N.Y. 2012)).

According to Defendants, Plaintiff "has not produced any evidence showing that any of the conduct about which he purportedly 'blew the whistle' – i.e., parking in fire zones, leaving freestanding/empty oxygen tanks, employee breaks, and use of a certain chemical for maintenance work – violated any law, rule, or regulation." Def. Mem. at 23. "Plaintiff did not disclose to a supervisor or to a public body an activity, policy or practice of Defendants that was in violation of law, rule or regulation. (*See* Klein Tr. pp. 145:23-146:8 (proper handling or storage of oxygen tanks); 148:2-11 (wheelchairs blocking fire extinguisher); 161:12-162:20

(employee breaks); 164:3-13 (parking in fire zones); 168:24-169:25 (use of chemicals)).” Def. Rule 56.1 Stmt. ¶ 50.  No harm resulted from any issue that Plaintiff raised.  *Id*. at ¶ 51. When specifically asked at his deposition whether he could identify any law, rule, or regulation that the conduct he complained about violated, Plaintiff repeatedly testified that he could not do so.  Def. Mem. at 23.  The Court has painstakingly reviewed all 500 pages of Plaintiff's response to Defendants' motion for summary judgment and the Court is unable to identify any complaint from Plaintiff regarding any law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety.

“Rather than engage with the requirements of the regulation itself, Plaintiff simply asserts that there was a violation.” *Rivera v. Affineco LLC*, 2018 U.S. Dist. LEXIS 68923, at *9, 2018 WL 2084152 (S.D.N.Y. Mar. 26, 2018).  “A plaintiff's conclusory assertion that a defendant violated the law, without more, is insufficient to support a claim under Section 740.”  *Koshy v. Regeneron Pharms., Inc*., No. 17-CV-07781, 2019 U.S. Dist. LEXIS 218102, at *22, 2019 WL 6895563(S.D.N.Y. Dec. 18, 2019) (granting summary judgment where plaintiff failed to identify “identify the specific laws, rules, or regulations that defendants violated”); *Betz v. Mem'l Sloan-Kettering Cancer Ctr*., No. 95-cv-1156 (RPP), 1996 U.S. Dist. LEXIS 10568, 1996 WL 422242, at *8 (S.D.N.Y. July 26, 1996), aff'd, 108 F.3d 329 (2d Cir. 1997) ("Summary judgment dismissing claims under Section 740 is appropriate where the plaintiff cannot point to a law, rule or regulation violated by the defendant.").   Accordingly, the undersigned respectfully recommends that Defendants' motion for summary judgment dismissing Plaintiff's claims pursuant to Section 740 of the NYLL be granted.

**OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF, except in the case of a party proceeding *pro se*. *Pro se* Plaintiff Robert Klein must file his objections in writing with the Clerk of the Court within the prescribed time period noted above. Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Counsel for Defendants is directed to serve a copy of this Order upon *pro se* Plaintiff forthwith and file proof of service on ECF.

Dated:  Central Islip, New York
    July 20, 2023

_____/s/_____

Arlene R. Lindsay
United States Magistrate Judge

27