**FILED**
**CLERK**

10/11/2023 10:26 am

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X
ROBERT KLEIN,

                Plaintiff,

    -against-

BROOKHAVEN HEALTH CARE FACILITY,
and THE MCGUIRE GROUP,

             Defendants.
-------------------------------X

MEMORANDUM & ORDER
17-CV-4841 (JS)(ARL)

APPEARANCES
For Plaintiff:      Robert Klein, pro se
                535 Brittany Road
                P.O. Box 1512
                Westcliffe, Colorado  81252

For Defendants:     Erin S. Torcello, Esq.
                Jessica C. Moller, Esq.
                Mary Elizabeth Moran, Esq.
                Bond, Schoeneck & King, PLLC
                Avant Building
                200 Delaware Avenue, Suite 900
                Buffalo, New York  14202

    SEYBERT, District Judge:

        Brookhaven Health Care Facility ("Brookhaven") and The McGuire Group (collectively "Defendants") move pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment (the "Motion"). (See ECF No. 80.)  By Report & Recommendation dated July 20, 2023 (the "R&R"), Magistrate Judge Arlene R. Lindsay ("Judge Lindsay") recommended Defendants' Motion be granted. (See R&R, ECF No. 87, at 8-26.)  Robert Klein ("Plaintiff") timely filed objections to the R&R. (See ECF No. 89.)  For the following

reasons, Plaintiff's objections to the R&R are OVERRULED, and the R&R is ADOPTED in its entirety.

BACKGROUND

The Court adopts the relevant factual background stated by Judge Lindsay in her R&R, finding the R&R accurately summarizes the relevant facts pertinent to this case, which are incorporated herein.[1]  (See R&R at 2-7.)  Similarly, the Court adopts Judge Lindsay's recitation of the relevant procedural history, which is also incorporated herein.  (Id. at 1-2.)  See Sali v. Zwanger & Pesiri Radiology Grp., LLP, No. 19-CV-0275, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022) ("Because neither Plaintiff nor Defendants challenge the Magistrate Judge's recitation of the facts, and the Court finds no clear error in that recitation, the Court incorporates the 'Factual Background' and 'Procedural Background' sections of the Magistrate Judge's Report and Recommendation into this Order.")  For the readers' convenience, the Court reiterates the following.

I.   Facts

Plaintiff "was employed in the maintenance department at Brookhaven from September 2009 through September 2016." (Id. at 3 (citing Def. R. 56.1 Stmt., ECF No. 80-28, ¶ 47, attached to

---

[1] Judge Lindsay's summation of the relevant factual background was derived from the Amended Complaint, the Defendants' Local Civil Rule 56.1 Statement and attached exhibits, and Plaintiff's Rule 56.1 Opposition.

Motion.))  Plaintiff was 58 years old when hired.  (Id. (citing Def. R. 56.1 Stmt. ¶ 46.))  Maintenance employees at Brookhaven "report directly to the Facility's Environmental Services Manager." (Id. (citing Gaines Decl., ECF No. 80-31, ¶ 11, attached to Motion.))

On September 5, 2016, Maintenance Supervisor Shaun Patrick ("Patrick") received a phone call from Joseph Malia ("Malia").  (Id. at 4.)  "Patrick states that he was informed by Malia that while he was using the '[W]orkspeed [P]hone' he checked the internet browsing history on the phone and noticed that approximately twenty pornographic websites had been visited that afternoon."[2] (Id. (citing Def. R. 56.1 Stmt. ¶¶ 2-3.))  "According to Patrick, Malia stated that he was making the report because he did not visit the sites and did not want to be accused of having doing so." (Id. (citing Def. R. 56.1 Stmt. ¶ 5.))  Debbie Gaines ("Gaines"), "who was responsible for addressing employee conduct issues," was informed the next day.  (Id. (citing Def. R. 56.1 Stmt. ¶¶ 6-7.))  "Patrick then collected the [W]orkspeed [P]hone from the maintenance employee on duty at the time, Hugo Rodriguez." (Id. at 5 (citing Def. R. 56.1 Stmt. ¶ 8.))  "When Patrick checked

---

[2] As noted by Judge Lindsay, "[t]he workspeed phone is a phone that is left at Brookhaven and passed from one maintenance employee to the next over successive shifts."  (R&R at 4 n.4.)  Hereafter, the Court refers to the workspeed phone as the "Workspeed Phone" or the "Company Phone."

the browsing history in an attempt to confirm what Malia had
reported he saw that the history had been cleared;" this
information was relayed to Gaines.[3]  (Id. (citing Def. R. 56.1
Stmt. ¶¶ 9-11.))

Subsequently, Gaines began gathering facts and
interviewing several employees to determine who was responsible
for accessing the prohibited websites on the Workspeed Phone.  (Id.
at 5-6.)   Ultimately, Gaines concluded Plaintiff was the
responsible party "because the investigation revealed [he] was the
only person, other than Malia, who had access to the [Workspeed]
[P]hone during the afternoon of September 5, 2016."  (Id. at 6
(citing Def. 56.1 Stmt. ¶ 35.))  Gaines determined Malia was not
responsible for visiting the websites because he "was the one who
brought the issue to the attention of management and," had
specifically stated during interviews "that his reason for doing
so was to avoid being blamed for something he did not do."  (Id.
at 7 (citing Def. R. 56.1 Stmt. ¶ 36.))  Conversely, Gaines
concluded, during his interview, "Plaintiff[] failed to provide an
explanation for how the websites could have appeared on the
[Workspeed] [P]hone if he did not view them and provided no

---

[3] During her investigation, Gaines interviewed Joseph Perugini
("Perugini") who admitted he had deleted the browsing history from
the phone after receiving it from Malia.  (R&R at 5 ((citing Def.
56.1 Stmt. ¶ 17-18.))  Further, Perugini informed Gaines he "always
clears the browsing history on the phone upon receiving it from
the employee who had worked the previous shift."  (Id.)

indication of who else could have viewed them." (Id. (citing Def. R. 56.1 Stmt. ¶ 37.))

"Under Brookhaven policy, any employee found to be abusing the privilege of telecommunications devices is subject to disciplinary action up to and including termination from employment." (Id. (citing Def. R. 56.1 Stmt. ¶ 38.)) Upon determining Plaintiff was responsible for accessing the prohibited websites on the Workspeed Phone, in violation of Brookhaven's policy, "Gaines offered Plaintiff the opportunity to resign[;] . . . [however,] Plaintiff declined" to do so. (Id. (citing Def. R. 56.1 Stmt. ¶¶ 40-41.)) Consequently, "Gaines . . . decided to terminate Plaintiff's employment." (Id. (citing Def. R. 56.1 Stmt. ¶ 41.)) "Plaintiff's termination, and the reason for it, [were] confirmed by letter from Gaines to Plaintiff dated September 20, 2016." (Id. (citing Def. R. 56.1 Stmt. ¶ 43.)) "Gaines, the ultimate decisionmaker with respect to the termination of Plaintiff's employment, was 64 years old at the time she made the decision to terminate Plaintiff's employment." (Id. (citing Def. R. 56.1 Stmt. ¶¶ 44-45.))

II. Procedural History

On November 17, 2022, Defendants filed their Motion. (See Motion; see also Support Memo, ECF No. 80-30, attached to Motion.) On February 13, 2023, Plaintiff filed his Opposition to Defendants' Motion. (See Opp'n, ECF No. 85.) Defendants filed

their Reply on April 28, 2023.  (See Reply, ECF No. 86.)  In the
interim, on April 27, 2023, this Court referred Defendants' Motion
to Judge Lindsay for a report and recommendation.  (See Apr. 27,
2023 Elec. Order Referring Mot.)  On July 20, 2023, Judge Lindsay
issued her R&R, to which Plaintiff timely filed his objections.
(See Obj., ECF No. 89.)  On August 15, 2023, Defendants filed a
response in support of the R&R's findings and in opposition to
Plaintiff's Objections.  (See Response ECF No. 90.)

   III. Judge Lindsay's R&R

        In the R&R, after summarizing the material facts and
procedural history of the action, Judge Lindsay identified the
rules governing summary judgment, together with the special
solicitude rules courts generally extend to pro se litigants
opposing such motions.  (See R&R at 8-9.)

     A. Age Discrimination and Retaliation Legal Standards

        Next, Judge Lindsay stated, "Plaintiff's claims for
employment discrimination under the ADEA are analyzed 'under the
burden-shifting framework set forth in McDonnell Douglas Corp. v.
Green[.]'" (Id. at 10 (citing Lively v. WAFRA Inv. Advisory Grp.,
Inc., 6 F.4th 293, 301, 305 (2d Cir. 2021)).)  Under this
framework:

        (1) a plaintiff must first establish a prima
        facie case of discrimination; (2) the burden
        then shifts to the employer to articulate a
        legitimate, nondiscriminatory reason for its
        actions; if the employer does so, the

> *McDonnell Douglas* framework and its
> presumptions and burden disappear, and, thus,
> (3) the burden shifts back to the plaintiff to
> show that the employer's reason is pretextual
> and that it masks the employer's true
> discriminatory reason.

(*Id.* (citing *Patterson v. City of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (further citation omitted)).)   Judge Lindsay further elucidated:

> [t]o establish a prima facie case of age
> discrimination . . . the plaintiff must
> demonstrate that "(1) he was within the
> protected age group . . .; (2) he was
> qualified for the position; (3) he experienced
> an adverse employment action; and (4) such
> action occurred under circumstances giving
> rise to an inference of discrimination."

(*Id.* at 10-11 (quoting *Summit v. Equinox Holdings, Inc.*, No. 20-CV-4905, 2022 WL 2872273, at *6 (S.D.N.Y. July 21, 2022)).) Finally, in analyzing Plaintiff's claim of retaliation under the ADEA, Judge Lindsay explained, to establish a *prima facie* case, Plaintiff must show:

> (1) he participated in a protected activity
> under the ADEA; (2) participation in the
> protected activity was known to the employer;
> (3) the employer thereafter subjected him to
> a materially adverse employment action; and
> (4) there was a causal connection between the
> protected activity and the adverse employment
> action—i.e., that a retaliatory motive played
> a part in the adverse action.

(*Id.* at 11 (quoting *Yagudaev v. Credit Agricole Am. Servs., Inc.*, No. 18-CV-0513, 2020 WL 583929, *13 (S.D.N.Y. Feb. 5, 2020)).)

B. <u>Plaintiff's Age Discrimination Claim</u>

Defendants conceded Plaintiff had established the first three elements of a <u>prima facie</u> age discrimination claim. (<u>Id.</u> at 12.) As such, Judge Lindsay focused her analysis on whether Plaintiff's termination "occurred under circumstances giving rise to an inference of discrimination[;]" (<u>id.</u> at 10-11), in this regard, Judge Lindsay determined it did not. (<u>Id.</u> at 12-16.) Specifically, Judge Lindsay highlighted Plaintiff's deposition testimony indicated "he was not aware of a single age-related comment from Gaines," and that "Plaintiff offer[ed] nothing more than his own subjective belief that discrimination was the basis for his termination." (<u>Id.</u> at 13.) Additionally, Judge Lindsay observed Plaintiff was hired when he was 58 years old and "numerous courts have concluded that a Plaintiff's age discrimination claim is undermined where Plaintiff was already a member of the protected age class when Defendants hired him." (<u>Id.</u> at 14 (citing <u>Stanojev v. Ebasco Servs., Inc.</u>, 643 F.2d 914, 921 (2d Cir. 1981)).) Similarly, Judge Lindsay emphasized Plaintiff had "testified that Gaines, the individual responsible for Plaintiff's termination, was one of the 'oldest' in the facility," and that "[c]ourts routinely conclude that 'invidious discrimination is unlikely' when 'the person who made the termination decision is in the same protected class as plaintiff.'" (<u>Id.</u> (quoting <u>Zuffante v. Elderplan, Inc.</u>, No. 02-CV-3250, 2004 WL 744858, at *6 (S.D.N.Y.

March 31, 2004)).)  Finally, Judge Lindsay found, "when asked if
he [was] aware of any age-related comments, Plaintiff only pointed
to two instances in which he was asked about his retirement plans."
(Id. at 15.)  Judge Lindsay found "[t]hese isolated comments
regarding Plaintiff's retirement plans [did] not raise an
inference of discrimination, as 'discussion of retirement is
common in offices, even between supervisors and employees, and is
typically unrelated to age discrimination.'"  (Id. (quoting
Hamilton v. Mount Sinai Hosp., 528 F. Supp. 2d 431, 447 (S.D.N.Y.
2007), aff'd, 331 F. App'x 874 (2d Cir. 2009)).)

   C. Defendants' Non-Discriminatory Reason for Termination

       Next, Judge Lindsay assumed arguendo Plaintiff could
establish a prima facie case of age discrimination but,
nevertheless concluded, Defendants had "met their burden to
'articulate some legitimate, nondiscriminatory reason' for
[Plaintiff's] termination."  (Id. at 16 (quoting Weiss v.
Quinnipiac Univ., No. 20-CV-0375, 2021 WL 4193073, at *4 (D. Conn.
Sept. 15, 2021)).)  Specifically, the R&R states Plaintiff's
employment was terminated, "because his superior, Gaines,
reasonably concluded, after an investigation, that Plaintiff
visited [prohibited] websites on a company cell phone during his
shift on September 5, 2016."  (Id. (citing Def. R. 56.1 Stmt.
¶¶ 35-37.))  Judge Lindsay found that, in similar factual
circumstances, "[n]umerous courts have held that an employer may

terminate an employee who violates company policies prohibiting the use of its computer systems for sending and receiving sexually explicit materials." (Id. at 17 (quoting Glenwright v. Xerox Corp., 832 F. Supp. 2d 268, 275 (W.D.N.Y. 2011) (collecting cases)).)

Subsequently, the R&R analyzed the issue of pretext because, under the burden shifting framework of McDonnell Douglas, "[o]nce Defendants have offered a legitimate, nondiscriminatory basis for their action, Plaintiff must offer evidence showing that Defendants' stated reason is merely pretextual." (Id.) Judge Lindsay explained, "[a] plaintiff may demonstrate pretext by showing 'weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its actions.'" (Id. (quoting Carr v. N.Y.C. Transit Auth., No. 16-CV-9957, 2022 WL 824367, at *9 (S.D.N.Y. Mar. 18, 2022)).) Moreover, the R&R notes, "[t]o show pretext, 'a plaintiff must offer evidence that age discrimination was the "but-for" cause of the challenged actions rather than just [being] a contributing or motivating factor.'" (Id. at 17-18 (quoting Robles v. Cox & Co., 987 F. Supp. 2d 199, 206-07 (E.D.N.Y. 2013) (cleaned up)).)

Here, Judge Lindsay highlighted Plaintiff's primary argument in response to Defendants' stated non-discriminatory reason was that the investigation conducted by Defendants was

flawed.  (Id. at 19.)  However, Judge Lindsay found "without more, the irregularities identified in the investigation process [were] insufficient to create material issues of fact because Plaintiff . . . failed to connect the irregularities to his claim of age discrimination."  (Id. (citing Bailey v. Nexstar Broad., Inc., No. 19-CV-0671, 2021 WL 848787, at *16 (D. Conn. Mar. 6, 2021)).)  Likewise, to the extent Plaintiff argued Defendants "treated younger employees more favorably because they accepted the word of the younger employees in the course of the investigation" over his own, Judge Lindsay found "Plaintiff's unsupported conclusion" could not "stand in the face of the conclusion of an internal investigation" that determined Plaintiff was the person responsible for visiting the prohibited websites. (Id. at 21.)  On the issue of but-for causation, Judge Lindsay likewise determined, "Plaintiff admitted at his deposition that he believe[d] his age was only one of multiple reasons for his discharge," and, that in such circumstances, "courts routinely conclude that a plaintiff cannot establish that discrimination was the 'but-for' reason for . . . termination[], as is required to carry a plaintiff's ultimate burden."  (Id. at 21-22 (citing Hu v. UGL Servs. Unicco Operations Co., No. 13-CV-4251, 2014 WL 5042150, at *7 (S.D.N.Y. Oct. 9, 2014)).)

D. <u>Plaintiff's Retaliation Claims</u>

In analyzing Plaintiff's retaliation claim, Judge Lindsay found "Plaintiff . . . failed to establish a prima facie case of retaliation under the ADEA because he . . . failed to demonstrate that he engaged in a protected activity under the ADEA." (<u>Id.</u> at 24.)  Additionally, the R&R stated, Plaintiff's Amended Complaint made the following allegations which formed the basis of his retaliation claim:

> [n]oticeable Complaints were brought forward. (Substantial and specific danger to the public's health and safety brought forward in good faith and common sense) and against policy and in violation of law).  NOTE: Verbal complaints (as noted in plaintiffs type written Complaint (103+- pages) 8 Sep/1 Oct 2016 submitted to the NYSDHR/EEOC Public safety, health, welfare, danger were unlawful policy of BHCF that were opposed.

(<u>Id.</u> (quoting Am. Compl., ECF No. 30, at 6.))  Despite these allegations, the R&R highlighted that Plaintiff testified he never informed either Patrick or Gaines that he felt he had been discriminated against because of his age since he "never was until the termination part."  (<u>Id.</u> (citing Pl.'s Dep. Tr., Ex. A, ECF No. 80-2, at 223:15-21, <u>attached to</u> Motion.)  Similarly, when asked if it was his testimony that he did not believe he was treated differently based upon his age until after he was terminated, Plaintiff testified that this was the case.  (<u>Id.</u>)

E. Plaintiff's NYLL Section 740 Claim[4]

In concluding Defendants' Motion should, likewise, be granted regarding Plaintiff's NYLL § 740 claim, Judge Lindsay emphasized:

> [t]he Court . . . painstakingly reviewed all 500 pages of Plaintiff's response to Defendants' motion for summary judgment and the Court [was] unable to identify any complaint from Plaintiff regarding any law, rule or regulation which violation create[d] and present[ed] a substantial and specific danger to the public health or safety.

(Id. at 26.)   Likewise, "[w]hen specifically asked at his deposition whether he could identify any law, rule, or regulation that the conduct he complained about violated, Plaintiff repeatedly testified that he could not do so."   (Id.)

DISCUSSION

I. Legal Standard

The Court adopts the "Legal Standard" pertaining to summary judgment stated by Judge Lindsay in her R&R, (see id. at 8), finding the R&R accurately summarized the relevant law.   The Court adds the following legal principles applicable to its analysis of Plaintiff's objections to the R&R.

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate

---

[4] NYLL refers to the New York Labor Law.

judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3).
The district judge must evaluate proper objections de novo;
however, where a party "makes only conclusory or general
objections, or simply reiterates [the] original arguments, the
Court reviews the Report and Recommendation only for clear error."
Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008)
(quoting Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1
(S.D.N.Y. Mar. 4, 2002)); FED. R. CIV. P. 72(b)(3). The Court need
not review the findings and conclusions to which no proper
objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985).

II.  Analysis

        Turning to Plaintiff's objections, the Court finds them
to be general and "mere reiterations of the arguments in [the]
original papers that were fully considered, and rejected, by" the
Magistrate Judge. Out of the Blue Wholesale, LLC v. Pac. Am. Fish
Co., Inc., No. 19-CV-0254, 2020 WL 7488072, at *2 (E.D.N.Y. Dec.
21, 2020) (quoting Rizzi v. Hilton Domestic Operating Co., Inc.,
No. 19-CV-1127, 2020 WL 6243713, at *2 (E.D.N.Y. Oct. 23, 2020)
(collecting cases)); see also (Obj. at 4 (requesting "this Court
read the Plaintiff[']s Memorandum of Law in Opposition- Doc 85;
Plaintiff[']s Objection Response to Def[.'s] Material Fact
Statement Document 85-14 and all [of] the plaintiff's exhibits

that [were] filed along with it.") Thus, the Court reviews Judge
Lindsay's analysis for clear error only.[5]

Plaintiff does not articulate specific objections to the
R&R but instead objects to every finding, on every page, of it.
(See Obj., in toto.) Despite Plaintiff's myriad objections, they
can largely be summarized as an attack on Defendants'
investigation. Plaintiff reargues his assertions: that the
investigation's findings were flawed; that he was not responsible
for accessing the prohibited websites; and there were other
employees who could have accessed the Workspeed Phone. However,
as highlighted by Judge Lindsay, "the fact that an employee
disagrees with the results of an employer's decision regarding
termination, or even has evidence that the decision was objectively
incorrect or was based on a faulty investigation, does not
automatically demonstrate, by itself, that the employer's
proffered reasons are a pretext for termination." Rodriguez v.
City of N.Y., 644 F. Supp. 2d 168, 187 (E.D.N.Y. 2008); see also
Leiner v. Fresenius Kabi USA, LLC, No. 14-CV-979S, 2019 WL 5683003,
at *8 (W.D.N.Y. Nov. 1, 2019) (finding, while plaintiff "may
disagree that his conduct amounted to falsification of documents,
this does not create an issue as to the veracity of [defendant's]

---

[5] Even if the Court were to engage in a de novo review of
Plaintiff's objections, for the reasons discussed herein, the
result would be the same.

reasons for terminating his employment," what matters is that defendant "relied on the results of its investigation--flawed or not--as the basis to terminate [plaintiff's] employment, and there [was] no evidence to the contrary"); Kolesnikow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 112 (S.D.N.Y. 2009) (finding "in the absence of evidence that Defendants acted in bad faith, failed to follow their ordinary disciplinary procedures or treated other employees differently . . . complaints about the adequacy of [defendants'] investigation, even if accepted as true, cannot show pretext or defeat a summary judgment motion.")

Indeed, as a sister court explained in rejecting a plaintiff-employee's pretext argument based upon a challenge to the employer's investigation, Title VII "does not provide remedies against poorly thought-out or unwise employment actions, but only against . . . discriminatory employment actions." Jordan v. Olsten Corp., 111 F. Supp. 2d 227, 236 (W.D.N.Y. 2000). Thus, because "Title VII prohibits discrimination, [and] not poor judgment," it does not protect a plaintiff against "a shoddy investigation" which leads to "a poorly informed decision to fire" the plaintiff. Id. ("[I]t is irrelevant whether [the employer] did a sub-standard job of investigating and reaching a decision.") (cleaned up). Instead, the plaintiff "must produce evidence that it was [the employer's] discriminatory animus that motivated [it] to

investigate the allegations and then make [its] decision to fire [the plaintiff]." Id.

Here, Plaintiff offers no evidence to establish Defendants' investigation was launched as a pretextual means of terminating his employment due to age discrimination.[6] In fact, the record evidence establishes the investigation was prompted by Defendants' discovery that an employee had used the Company Phone to access prohibited websites. (See Def. R. 56.1 Stmt. ¶¶ 2-12; Pl.'s Dep. Tr., at 186:12-25; 190:10-17.) Ultimately, absent evidence that the investigation was pretextual, whether Plaintiff was innocent of the conduct alleged is irrelevant in analyzing his Title VII claims. See Brown v. Soc'y for Seaman's Children, 194 F. Supp. 2d 182, 191 (E.D.N.Y. 2002) ("[A]lthough plaintiff felt she had been treated unfairly, . . . [t]here simply is no basis in

---

[6] To the extent Plaintiff argues his exonerated co-workers were younger than him and, as such, Defendants' decision to believe their version of events over Plaintiff's own, evinces age discrimination, such an argument is conclusory and unsupported by any evidence in the record. On the contrary, Gaines provided several non-discriminatory reasons supporting the findings of her investigation, to wit: (1) Malia had reported the prohibited websites on the Company Phone's browser history and when asked why he had done so responded he had reported it because he did not want to be blamed for it (Def. R. 56.1 Stmt. ¶¶ 25-26); (2) the Company Phone was in Plaintiff's custody during the time period in which the prohibited websites were accessed (id. ¶ 27); (3) notwithstanding Plaintiff's argument he left the Phone in the maintenance room unattended, the maintenance shop was a secure location (id. 30-31); and (4) Plaintiff provided no explanation for how the websites could have appeared in the phone's browsing history if he did not view them (id. ¶ 33.)

the record from which a rational juror could find that the reasons given for plaintiff's termination . . . were false or a pretext for discrimination."); see also Jordan, 111 F. Supp. 2d at 236.

Similarly, and as the R&R makes clear, "[w]hile [the court] must ensure that employers do not act in a discriminatory fashion, [it] do[es] 'not sit as a super-personnel department that reexamines an entity's business decisions.'" Delaney v. Bank of Am. Corp., 766 F.3d 163, 169 (2d Cir. 2014) (quoting Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997))).   Consequently, Plaintiff's argument that Defendants' telecommunications policy was inconsistently applied (see, e.g., Obj. at 6, 8, 11), does not serve to create an issue of material fact.   Defendants' disciplinary policy states, in pertinent part, "[a]ny employee found to be abusing the privilege of any telecommunication [devices]" risks "having the privilege revoked not only for themselves, but also for other employees they may have involved. In addition, disciplinary actions may be warranted up to and including immediate termination." (Brookhaven Policy, Ex. B, ECF No. 80-33, at 3, attached to Motion (emphasis added).) Defendants' decision not to terminate Malia for accessing the Company Phone's browsing history, or Perguini for subsequently clearing the browsing history is not inconsistent with the telecommunications policy, which leaves it to Defendants to determine the appropriate punishment for whatever telecommunication violations arise.   The

policy simply puts employees on notice that such punishment may include, but does not mandate, termination.[7]  See Glenwright, 832 F. Supp. 2d at 278 ("[T]he existence of [defendant's] ethics policies is not negated by claims that other employees disregarded or misunderstood them.").

To the extent not explicitly addressed, the Court has considered the remainder of Plaintiff's discernable arguments and finds them to be without merit.  Finding no error -- clear or otherwise -- in Judge Lindsay's R&R, Plaintiff's objections are OVERRULED in their entirety.

---

[7] The Court also rejects Plaintiff's argument that Malia and Perguini were his comparators such that their difference in treatment during the investigation raises an inference of age discrimination (see Obj. at 6, 8, 11.)  See Spiess v. Xerox Corp., No. 08-CV-6211, 2011 WL 2973625, at *6 (W.D.N.Y. July 21, 2011) (finding, where plaintiff alleged "he received less favorable treatment than other employees guilty of the same policy violations. . . . [p]laintiff must show that the situation between him and his comparators was so similar that it supports an inference that the difference in treatment can be attributable to discrimination").  The policy violations Malia and Perguini admitted to during the investigation, accessing browsing history and deleting browsing history, respectively, were considerably less egregious than the violation which Plaintiff was ultimately found to have committed, accessing prohibited websites.  This alone provides an explanation for the differentiation in treatment between Plaintiff, Malia, and Perguini.  Cf. id. at *9 (finding no sex discrimination where male plaintiff was terminated for violation of defendant's code of conduct but female employee, who "was found to have engaged in less egregious conduct[,]" was not).

CONCLUSION

Accordingly, having overruled Plaintiff's objections, the R&R (ECF No. 87) is ADOPTED in its entirety, and Defendants' Summary Judgment Motion (ECF No. 80) is GRANTED.  The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.

**IT IS FURTHER ORDERED** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal from this Order would not be taken in good faith and therefore in forma pauperis status is DENIED for the purpose of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of the Court shall mail a copy of this Memorandum & Order to the pro se Plaintiff and make a notation of such service on the docket.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: October 11, 2023
       Central Islip, New York